**DE MAYO v. UNITED STATES (two cases).**

Circuit Court of Appeals, Eighth Circuit. April 9, 1929.

Nos. 8315, 8316.

Edward P. Marshall, of Tulsa, Okl. (Walter W. Calvin, of Kansas City, Mo., and Bird McGuire and Felix A. Bodovitz, both of Tulsa, Okl., on the brief), for appellant and plaintiff in error.

Harry Seaton, Asst. U. S. Atty., and John M. Goldesberry, U. S. Atty., both of Tulsa, Okl.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

VAN VALKENBURGH, Circuit Judge. ■ These cases come to us both on writ of error and on appeal. Appeal is the proper procedure under existing law, and the writ of error is dismissed.

This appeal is from a conviction in the District Court for the Northern District of Oklahoma upon an indictment containing four counts; the first, for conspiracy, and the other three for the substantive offenses of introducing intoxicating liquor unlawfully from without the state of Oklahoma into that part of the state which was formerly Indian Territory. The destination was Tulsa. The conspiracy is charged against one Jack Clarkson, appellant Frank De Mayo, one Abe Schneider, one Joe Burencio, one Joe Panittio, and one Joseph Maniscalie. It is alleged that on or about the 11th day of April, 1928, they did unlawfully, knowingly, feloniously, etc., conspire and agree together and with one L. L. Kelsey to commit an offense against the United States, to wit, to introduce, carry into, and cause to be carried into the city of Tulsa, in the state and Northern Judicial District of Oklahoma— the same having been within the limits of the Indian Territory, and a part thereof prior to the admission of the state of Oklahoma into the union—from Kansas City, Mo., a point without the state of Oklahoma, certain intoxicating liquor, to wit, alcohol and whisky. The first overt act charges that the said Jack Clarkson did, on the date in question, in the city of Tulsa, deliver to L. L. Kelsey a certain order to the appellant Frank De Mayo, which order stated in substance "that the bearer was O. K. and that the defendant De Mayo should give the bearer anything that he wanted." It was further stated that this order was carried by Kelsey to Kansas City and delivered to De Mayo on or about the 12th day of April, 1928; that as a result thereof grain alcohol was caused to be carried into and introduced into the city of Tulsa. The other three overt acts charge the defendants with causing liquor to be carried into the Indian Territory on the divers dates mentioned therein through and by the said Kelsey. The three substantive counts are based upon the same transactions described in these last three overt acts. It developed in the testimony that Kelsey, together with one Kennedy, was acting as the representative and agent of the prohibition officers of the United States; that he was in effect such an officer and did what he did for the purpose of detecting the conspirators and of bringing them to trial and conviction. It is urged, therefore, by appellant that the indictment, if not in fact invalid because of the incorporation of Kelsey as a coconspirator, failed of support by the evidence in that a government officer, who is not in fact a coconspirator, but who acts simply for the purpose of detecting crime, cannot bind his codefendants; that his acts are not imputable to them because there is not community of purpose. It is further insisted that, though there may have been a previous understanding and confederation between the other defendants, the joining of Kelsey created a new conspiracy, and that this conspiracy between De Mayo and the others in Kansas City, and Clarkson in Tulsa, was not consummated in any view until after the giving of the letter by Clarkson to Kelsey for De Mayo. It is further urged that the last three overt acts cannot be sustained for the reason that they were performed by the government officer, Kelsey, and cannot, therefore, be imputed to the other alleged conspirators.

■ As to the first of these propositions, it seems clear that if, in addition to the parties

first named, Kelsey, though not a government officer, had been included as a defendant, and it had developed that Kelsey was not a party to the conspiracy, it could not be claimed that the conspiracy charged would fail on that account as to the others. We take it that Kelsey's incompetency to become a conspirator under the facts existing effects a result no different from that which would follow if he were otherwise found not to be a party to the unlawful agreement. It sufficiently appears from the testimony that De Mayo and his confederates had been, and were, engaged in the business of introducing intoxicating liquor into the Indian Territory. This appears from testimony as to the statements of Clarkson and De Mayo themselves, of their familiarity with the routes to be taken, the statement of De Mayo that Clarkson was operating on a commission of 50¢ a gallon, and other evidence, all of which established the fact for the consideration of the jury that such a conspiracy did exist prior to the entrance of Kelsey upon the scene. Of course, the date laid in the indictment would not rigidly govern. It follows, we think, that the indictment presents a valid charge consisting of the conspiracy and the first overt act.

As to the three remaining overt acts, we are of opinion that government officers should not so far participate as themselves to perform unaided by any of the conspirators the crucial act of introducing the liquor into the forbidden territory. They may properly afford opportunity to those suspected of crime to commit the original offense. They may be participants to a certain extent, but they, themselves, may not unaided, as in this case, do the very overt act which is essential to the consummation of the offense charged. In conspiracy cases, no matter what evil may be planned, the crime has not been committed until an act has been done in furtherance thereof. There is a locus pœnitentiæ lying between the thought and the deed. The accused may not be deprived of that period of immunity by the act of a government officer who is not in law a co-conspirator. The record discloses, in abundance, overt acts sufficient to sustain this charge if brought in the Western District of Missouri, but the venue laid was in the Northern District of Oklahoma, and introduction into that district, as alleged in the second, third, and fourth overt acts pleaded, was essential to the jurisdiction conferred by those acts. This introduction could not be made by the government officers, whose acts, under the evidence in this case, could not be imputed to the appellant.

In State v. Jansen, 22 Kan. 498, Mr. Justice Brewer, then one of the Justices of the Kansas Supreme Court, said:

"The act of a detective may, perhaps, not be imputable to the defendant, as there is a want of a community of motive. The one has a criminal intent, while the other is seeking the discovery and punishment of crime. But where each of the overt acts going to make up the crime charged, is personally done by the defendant, and with criminal intent, his guilt is complete, no matter what motives may prompt or what acts be done by the party who is with and apparently assisting him. Counsel have cited and commented upon several cases in which detectives figured, and in which the defendants were adjudged guiltless of the crimes charged. But this feature distinguishes them, that some act essential to the crime charged, was in fact done by the detective, and not by the defendant; and this act not being imputable to the defendant, the latter's guilt was not made out. Intent alone does not make crime. The intent and the act must combine; and all the elements of the act must exist and be imputable to the defendant."

This statement of the law is supported by the great weight of authority. Counsel for the government cite in opposition State of South Dakota v. Fiman (D. C.) 29 F.(2d) 770, affirmed (C. C. A. 8) 29 F.(2d) 776. This was a civil case involving the well known principle that a state cannot be estopped by unauthorized, illegal, or fraudulent acts of its agents. It is, therefore, without application here. Our attention is also directed to People v. Mills, 91 App. Div. 331, 86 N. Y. S. 529, affirmed in 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131. Without analysis, it is sufficient to state that that case may be readily distinguished from the one before us, and does not militate against the views herein expressed.

What has been said of these overt acts applies with equal force to the three counts of the indictment charging the substantive offenses of introducing liquor into the forbidden territory. The case presented, then, must be based upon the conspiracy charge as consummated only by the first overt act pleaded. It remains to be seen whether the conviction can be sustained upon the record in view of the other errors assigned.

Complaint is made of instructions refused and given. Those refused, for the most part, merely embody the points raised to which reference has already been made; others of like nature were sufficiently covered by the court. The charge on entrapment was

sound. It was in evidence that for months officers had been aware of, and had ground to suspect, operations of this nature between Kansas City and Tulsa. It was, therefore, proper for them to give opportunity to the defendants to engage in these transactions for purposes of detection and law enforcement.

In his instruction on the Act of Congress of March 1, 1895, the court not only read section 8 thereof (25 USCA § 241a), but commented upon the provision which makes any one interested in carrying liquor into this territory guilty of an offense as an aider and abettor. This charge was not incorporated in the indictment and should have been omitted from the court's instructions for that reason.

Error is assigned to the action of the court in permitting the government to introduce evidence as to the robbery of and assault upon Kelsey and Kennedy by highwaymen, when these officers made a later visit to Kansas City for the purpose of securing a further consignment of liquor from De Mayo and his associates; and to the admission of testimony of a witness, Prudom, as to appellant's declaration that he had had two government agents "taken for a ride"; that his orders to put them out of the way had not been carried out; that he had previously been convicted of a similar offense and had little hope of escaping now. While an effort to make away with witnesses is admissible, if sufficient connection be shown, as bearing upon the guilt of a defendant, and while this is true even though the commission of another offense be thus incidentally revealed, it must, we think, be conceded that the connection between this assault and robbery and the vague statements of appellant was of doubtful certainty, and that the recital by Prudom contained incompetent matter of a prejudicial nature.

Lastly, error is assigned to the statement of the United States Attorney in argument, calling attention in an indirect, but very damaging way, to the fact that De Mayo had failed to take the stand.

Concerning this incident the following appears in the record:

"Mr. Bodovitz: (out of the hearing of the jury.) We desire to object to the argument of the District Attorney wherein he pointed to the defendant De Mayo and stated, 'that he,' pointing to defendant Mayo, 'sat silently in his seat and allowed this poor innocent girl to take the stand and tell what happened out there that night in his house.'

"The Court: Just a minute. What is it gentlemen you are dictating to the reporter?

"Mr. Marshall: We desire to have the jury admonished and we desire to object to the same for the reason it constitutes misconduct on the part of the government attorney.

"The Court: What is the argument?

"Mr. Marshall: The argument of the District Attorney which was as follows: that you permitted this poor innocent girl to take the stand and you sat silently in your seat and pointed to the defendant, which itself not only constitutes misconduct on the part of the government attorney on the failure of the defendant to take the stand in his own behalf, and improper conduct on the part of government counsel and we ask the court to admonish the jury, and to discharge the jury and declare a mistrial.

"The Court: Well, you know what the reference was to. If there was any reference to the defendant keeping his seat, of course that is improper argument and it will not be considered by the jury and they will be instructed not to consider it.

"Mr. Calvin: We want to still insist on the error being sufficient to warrant the jury being discharged.

"The Court: No, I don't think so."

Such reference is reversible error unless the court sharply, emphatically, and promptly advises the jury that the matter is improper and that they should give no consideration thereto. This should be done in unmistakable and positive terms. To that extent, at least, if not to a greater extent, counsel should be rebuked. This is one of the most damaging acts on the part of a prosecutor that can be committed in the course of a trial, not only from the standpoint of the defendant, but because of its effect upon the case generally, and should not be condoned. We do not think the court in this case dealt strongly enough with the situation.

It is improbable that the irregularities to which attention has been called will be repeated in another trial of the case; but we cannot forbear calling attention to the serious damage which may accrue to the administration of the criminal laws if counsel permit their zeal thus to obscure their judgment in the heat of trial. A prosecution may fail and the cause of justice may suffer quite as completely through over-trying as through lack of preparation and neglect. It follows that the judgment below must be reversed and remanded, with directions that the second, third and fourth counts of the indictment be

dismissed and that a new trial be granted upon the first count thereof in accordance with the views herein expressed. It is so ordered.