THE STATE OF OHIO, APPELLEE, *v.* O'CONNOR, APPELLANT.

(No. 39119—Decided May 25, 1966.)

*Mr. Harry Friberg*, prosecuting attorney, and *Mr. Anthony Pizza*, for appellee.

*Mr. James W. Cowell* and *Mr. Raymond S. Metzger, Jr.*, for appellant.

TAFT, C. J. Shortly after the decision in *Griffin* v. *California, supra* (380 U. S. 609), this court admitted for review all cases where the prosecutor had commented or the trial judge

had charged upon a criminal defendant's failure to testify. Surprisingly, there were only five such cases. Thereafter, the Supreme Court of the United States remanded *Howell* v. *Ohio* (1965), 381 U. S. 275, 14 L. Ed. 2d 430, 85 S. Ct. 1457, "for further consideration in light of *Griffin* v. *California*." This court promptly reversed the judgment in that case (*State* v. *Howell* [1965], 4 Ohio St. 2d 11, 211 N. E. 2d 56) and ordered the prosecutor in each of the five cases previously admitted for review to specify whether there was any reason for not reversing without further argument on the authority of the *Griffin* and *Howell cases*. Because no such reason was advanced, the judgments in two of those cases were summarily reversed. *State* v. *Browning* (1965), 38 Ohio Bar, No. 45, 1256; *State* v. *Reed* (1965), 38 Ohio Bar, No. 45, 1256. Subsequently, a defendant in a third case withdrew his appeal to this court. *State* v. *Lynn* (1966), 5 Ohio St. 2d 106, 107. The judgment against another defendant (Illacqua) was reversed on authority of *Griffin* v. *California, supra* (380 U. S. 609). *State* v. *Lynn, supra* (5 Ohio St. 2d 106). This court, with no dissent noted, refused to reverse the judgment against the fifth defendant (Conti) for the reason that the question, which is related to the question involved in and had no vitality whatever before *Griffin* v. *California, supra* (380 U. S. 609), was not raised by such defendant either at the trial or in the Court of Appeals. *State* v. *Lynn, supra* (5 Ohio St. 2d 106) (paragraph six of syllabus). A similar decision had been rendered in *City of Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22, where this court stated in paragraph two of its syllabus that "the Supreme Court will not ordinarily consider a claim of error that was not raised in any way in the Court of Appeals and was not considered or decided by that court." *Lynn* was decided by this court after and with knowledge of the remand of the instant case.

Because of the decisions of the United States Supreme Court in *Griffin* v. *California, supra* (380 U. S. 609), and *Howell* v. *Ohio, supra* (381 U. S. 275), it is settled that, in a criminal case, a charge by the court and a comment by the prosecutor, that the jury may consider the failure of a defendant to testify as to matters which he can reasonably be expected to deny or explain because of facts within his knowledge, are a denial of

the defendant's constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution. *Tehan, Sheriff,* v. *United States, ex rel. Shott* (1966), 15 L. Ed. 2d 453, 86 S. Ct. 459, determines that the law as declared in *Griffin* v. *California, supra* (380 U. S. 609), is applicable to all cases that were still pending on direct review at the time that *Griffin* was announced.

This brings us to the only question involved in the instant case. That question may be stated as follows:

May the Supreme Court of Ohio properly refuse to consider a claim of error that was not raised in any way in the trial court or in the Court of Appeals and was not considered or decided by that court?

As hereinbefore stated, this court recently held that it may. *City of Toledo* v. *Reasonover, supra* (5 Ohio St. 2d 22), and *State* v. *Lynn, supra* (5 Ohio St. 2d 106). See also *State* v. *Jones* (1965), 4 Ohio St. 2d 13, 211 N. E. 2d 198, and *State* v. *Davis* (1964), 1 Ohio St. 2d 28, 203 N. E. 2d 357.

The holdings in the *Reasonover* and *Lynn cases* accord with similar holdings made by courts of last resort in other states in similar circumstances. *People* v. *Friola* (1962), 11 N. Y. 2d 157, 182 N. E. 2d 100; *People* v. *West* (1963), 12 N. Y. 2d 1090, 190 N. E. 2d 532; *Shorey* v. *State* (1962), 227 Md. 385, 177 A. 2d 245, certiorari denied, 371 U. S. 928.

Such holdings also accord with the rules of the Supreme Court of the United States which are based upon the constitutional (Section 2, Article III) and statutory (Section 1257, Title 28, U. S. Code) provisions defining and limiting the appellate jurisdiction of that court. For example, in Rule 23, 1(f), of the Supreme Court, relative to petitions for certiorari, the petitioner is required to "show that the federal question was timely and properly raised so as to give this court jurisdiction to review the judgment on writ of certiorari," and Rule 16, 1(b) provides that "the court will receive a motion to dismiss an appeal from a state court on the ground * * * that the federal question sought to be reviewed was not timely or properly raised, or expressly passed on; or that the judgment rests on an adequate non-federal basis."

Those decisions further accord with the decisions of the

Supreme Court of the United States. Thus, in footnote 9 of *Mapp* v. *Ohio* (1961), 367 U. S. 643, 6 L. Ed 2d 1081, 81 S. Ct. 1684, it is stated:

"As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected."

Examples of the respect given to state procedural requirements such as those recognized by this court in the *Reasonover* and *Lynn cases* are found in *Edelman* v. *California* (1953), 344 U. S. 357, 97 L. Ed. 387, 73 S. Ct. 293; *Brown* v. *Allen, Warden* (1953), 344 U. S. 443, 486, 97 L. Ed. 469, 504, 73 S. Ct. 397, 422; *Michel* v. *Louisiana* (1955), 350 U. S. 91, 100 L. Ed. 83, 76 S. Ct. 158; *Parker* v. *Illinois* (1948), 333 U. S. 571, 92 L. Ed. 886, 68 S. Ct. 708; *Baldwin* v. *Kansas* (1889), 129 U. S. 52, 32 L. Ed. 640, 9 S. Ct. 193; *Spies* v. *Illinois* (1887), 123 U. S. 131, 181, 31 L. Ed. 80, 91, 8 S. Ct. 21, 31; *Leeper* v. *Texas* (1891), 139 U. S. 462, 35 L. Ed. 225, 11 S. Ct. 577; *Duncan* v. *Missouri* (1894), 152 U. S. 377, 38 L. Ed. 485, 14 S. Ct. 570; and *Hartford Life Ins. Co.* v. *Johnson* (1919), 249 U. S. 490, 63 L. Ed. 722, 39 S. Ct. 336.

Undoubtedly, the trial court erred in the instant case in charging upon defendant's failure to testify.

There is nothing to indicate that the Supreme Court of the United States determined in *Tehan, Sheriff,* v. *United States, ex rel. Shott, supra* (15 L. Ed. 2d 453), that our court must hold that the trial court so erred, even though no such claim of error was raised either in the trial court or in the Court of Appeals and even though procedural due process in Ohio, as consistently recognized by our statutes and the decisions of this court, contemplates that this court should not even consider a claim of error not raised in any way in the Court of Appeals and not considered or decided by that court.

There is nothing to indicate that the Supreme Court of the United States knew, when it "remanded" this case to this court "for further proceedings in the light of *Griffin,*" that defendant had not previously raised in the Ohio courts the contention now relied upon. Certainly, the fact, that defendant originally relied only upon some other claim of error before the Supreme

174

Court of the United States, would not inform that court that that was the only claim of error relied upon by that defendant in the courts of Ohio. We all know that an appellant frequently does not raise in our court all the errors that he relied upon in his unsuccessful appeal to the Court of Appeals.

Defendant's application for rehearing expressly represented to the Supreme Court of the United States that the same ground as in *Howell* v. *Ohio, supra* (381 U. S. 275) (*i. e.* violation of constitutional rights by reason of the court's charge and comment of the prosecutor on the defendant's failure to testify), was available to the defendant in the instant case. That application further expressly represented that, so far as this ground is concerned, the two cases (the instant case and the *Howell case*) did not differ until the appeal to the Supreme Court of the United States. Admittedly, they did differ. In *Howell*, the question as to such charge of the court and comment of counsel was consistently raised from the time when such charge and comment were made. However, in the instant case, no question with respect to any such charge or comment was ever raised until after defendant's petition for certiorari had been denied by the Supreme Court of the United States.

There is nothing to indicate that this important difference between the instant case and the *Howell case* was ever called to the attention of or known by the Supreme Court of the United States when it remanded the instant case to this court for further proceedings.

It is suggested that defendant should not be expected to raise the claim of error, now relied upon, before the Supreme Court of the United States had given it vitality by its decision in *Griffin*. We answered such a contention in *Reasonover* where, at page 25, we stated:

"It may reasonably be argued that defendant should be excused from raising in the Court of Appeals his claim of error with respect to the prosecutor's comment on his failure to testify, because he could not reasonably anticipate such an unusual decision as *Griffin* v. *California, supra*. But see 5 American Jurisprudence 2d 29, Section 545.

"However, as early as June 15, 1964, when *Malloy* v. *Hogan*,

*Sheriff*, 378 U. S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 was decided, there was considerable speculation among lawyers and layman and in newspapers as to whether the Supreme Court would render a decision such as it later rendered in *Griffin*. Thereafter, any defendant who considered that he had been prejudiced by comment of the prosecutor on his failure to testify should have promptly raised that question. The defendant in the instant case did not do this although his case was not submitted to the Court of Appeals for decision until a substantial time after the decision in *Malloy*."

See also *Sunal* v. *Large, Supt.* (1947), 332 U. S. 174, 91 L. Ed. 1982, 67 S. Ct. 1588.

It is not reasonable to infer from the brief memorandum opinion of the United States Supreme Court in the instant case that that court intended to depart from the law, as so recently stated in the court's opinion in *Edelman* v. *California, supra* (344 U. S. 357), as follows:

"* * * We granted certiorari because of serious constitutional questions raised as to the validity of the vagrancy statute * * *. * * * it is necessary at the outset to determine whether we have jurisdiction in this case.

"Petitioner contends, first, that his conviction violates the due process clause of the Fourteenth Amendment because the vagrancy statute is vague, indefinite and uncertain. The record indicates that this defense was not raised on trial but was presented for the first time as the fifth of petitioner's grounds of appeal * * *.

"It is clear that this court is without power to decide whether constitutional rights have been violated when the federal questions are not seasonably raised in accordance with the requirements of state law. * * * Noncompliance with such local law can thus be an adequate state ground for a decision below. * * * It follows that the question whether the vagrancy statute is invalid under the Fourteenth Amendment is not properly before us."

In our opinion, if the Supreme Court of the United States intended to make such an important departure from its long and consistent line of prior decisions, from the statutes governing

its jurisdiction, and even from its own rules, the Supreme Court of the United States would have at least expressed its intention to do so.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS and SCHNEIDER, JJ., concur.

O'NEILL, HERBERT and BROWN, JJ., dissent.

O'NEILL, J., dissenting. This cause was remanded to this court by the Supreme Court of the United States on December 13, 1965 (15 L. Ed. 2d 337), "for further proceedings in light of *Griffin* v. *California,* 380 U. S. 609."

The sole question presented by this case is whether this defendant, whose trial and appeal to the Court of Appeals, to this court and to the United States Supreme Court occurred before the announcement of *Griffin* v. *California, supra,* by the United States Supreme Court, is entitled to the benefit of the rule established in that case, even though he did not raise the question until his petition for rehearing in the United States Supreme Court.

The rule to be followed in deciding this question was set forth by Mr. Justice Stewart in *Tehan, Sheriff,* v. *United States, ex rel. Shott,* 15 L. Ed. 2d 453, decided January 19, 1966. That was a federal habeas corpus case before the United States Supreme Court solely upon the issue of whether *Griffin* should be applied to a case where all rights of direct appeal had been exhausted prior to the announcement of *Griffin.* The court there held that the *Griffin* rule should not be applied retrospectively, but should be applied to cases pending on direct appeal at the time the decision in *Griffin* was announced.

This case falls squarely within that holding. Any doubt as to the applicability of the *Griffin* rule was dispelled by Mr. Justice Stewart in a specific reference to the case now before this court in *Tehan, supra,* footnote 3, where he stated:

"* * * Nor is there any question of the applicability of the *Griffin* rule to cases still pending on direct review at the time it was announced. Cf. *O'Connor* v. *Ohio* * * * [15 L. Ed. 2d 337]."

The majority refuses to accept this pronouncement of law by Mr. Justice Stewart, with specific reference to the case now before this court as being controlling, on the ground that Mr. Justice Stewart did not know or understand that defendant O'Connor first raised the question of adverse comment upon his failure to testify in his petition for rehearing before the United States Supreme Court.

After a careful reading of the record and the briefs, filed both in this court and in the United States Supreme Court, and the opinions in *Griffin* and *Tehan, supra,* I find no basis for the position that the Justices of the Supreme Court of the United States did not know or understand that this question was raised for the first time in the petition for rehearing before that court. However, I am also of the opinion that the fact that this question was not raised until a motion for rehearing was made in the Supreme Court of the United States has no controlling relevance to the decision in this case, since the fact is that this case was pending on direct appeal in the United States Supreme Court when *Griffin, supra,* was announced.

Prior to the decision in *Griffin,* under decisions of the United States Supreme Court, it was not a denial of a defendant's federal constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution for the trial court, in its charge to the jury in a criminal case, to comment upon the failure of the defendant to testify pursuant to Section 10, Article I of the Ohio Constitution, which provides:

"* * * No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be the subject of comment by counsel."

Section 2945.43 of the Revised Code of Ohio contains substantially the same wording.

The validity of a provision such as this one, which was adopted as a part of our Constitution in 1912, was established by the Supreme Court of the United States in *Twining* v. *New Jersey,* decided in 1908, 211 U. S. 78. Mr. Justice Stewart discussed *Twining* in his opinion in *Tehan, supra,* at 456, as follows:

"* * * In that case the plaintiffs in error had been con-

victed by the New Jersey courts after a trial in which the judge had instructed the jury that it might draw an adverse inference from the defendants' failure to testify. The plaintiffs in error urged in this court two propositions: 'first, that the exemption from compulsory self-incrimination is guaranteed by the federal Constitution against impairment by the states; and, second, if it be so guaranteed, that the exemption was in fact impaired in the case at bar.' 211 U. S., at 91 * * *.''

As Mr. Justice Stewart said in *Tehan, supra,* the Supreme Court in *Twining* ''* * * held, explicitly and unambiguously, 'that the exemption from compulsory self-incrimination in the courts of the states is not secured by any part of the federal Constitution.' 211 U. S., at 114 * * *.''

Mr. Justice Stewart then pointed out that the rule established in the *Twining case* was reaffirmed many times throughout the ensuing years by Mr. Justice Cardozo in *Snyder* v. *Massachusetts,* 291 U. S. 97, 105, by Mr. Chief Justice Hughes, writing for a unanimous court reaffirming explicitly *Twining* and *Snyder,* in *Brown* v. *Mississippi,* 297 U. S. 278, 285, in *Palko* v. *Connecticut,* 302 U. S. 319, 324, 325, 326, in *Adamson* v. *California,* 332 U. S. 46, in *Knapp* v. *Schweitzer,* decided in 1958, 357 U. S. 371, 374, and in *Cohen* v. *Hurley,* decided in 1961, 366 U. S. 117, 127-129.

Mr. Justice Stewart then said in *Tehan, supra,* at page 457:

"In recapitulation, this brief review clearly demonstrates: (1) For more than half a century, beginning in 1908, the court adhered to the position that the federal Constitution does not require the states to accord the Fifth Amendment privilege against self-incrimination. (2) Because of this position, the court during that period never reached the question whether the federal guarantee against self-incrimination prohibits adverse comment upon a defendant's failure to testify at his trial. Although there were strong dissenting voices, the court made not the slightest deviation from that position during a period of more than 50 years."

Then, at page 458:

"* * * on April 28, 1965, *Griffin* v. *California* held that the Fifth Amendment 'in its bearing on the states by reason of the

Fourteenth Amendment, forbids * * * comment by the prosecution on the accused's silence * * *.' (380 U. S., at 615 * * *.)

"There can be no doubt of the states' reliance upon the *Twining* rule for more than half a century, nor can it be doubted that they relied upon that constitutional doctrine in the utmost good faith. Two states amended their constitutions so as expressly to permit comment upon a defendant's failure to testify, Ohio in 1912, and California in 1934. At least four other states followed some variant of the rule permitting comment.

"Moreover, this reliance was not only invited over a much longer period of time, during which the *Twining* doctrine was repeatedly reaffirmed in this court, but was of unquestioned legitimacy as compared to the reliance of the states upon the doctrine of *Wolf* v. *Colorado*, considered in *Linkletter* as an important factor militating against the retroactive application of *Mapp*. During the 11-year period between *Wolf* v. *Colorado* and *Mapp* v. *Ohio*, the states were aware that illegal seizure of evidence by state officers violated the federal Constitution. In the 56 years that elapsed from *Twining* to *Malloy*, by contrast, the states were repeatedly told that comment upon the failure of an accused to testify in a state criminal trial in no way violated the federal Constitution."

The rule of law pronounced by the United States Supreme Court in *Griffin, supra*, made invalid a portion of the above-quoted provision of the Ohio Constitution and of Section 2945.43 of the Revised Code allowing adverse comment upon the failure of a defendant in a criminal case to testify.

The majority opinion relies heavily upon the often announced, widely recognized and sound proposition of law that the United States Supreme Court will accord respect to state procedural rules and cites as authority for the majority position *Edelman* v. *California*, 344 U. S. 357, and *State* v. *Lynn*, 5 Ohio St. 2d 106.

The question which this court is called upon to determine in this case is a narrow question. It is limited to the fact that this case was tried before *Malloy* v. *Hogan, Sheriff*, 378 U. S. 1, was decided and was pending on direct appeal in the United States Supreme Court when *Griffin, supra*, was announced. It

will serve a good purpose to indicate wherein this question differs from the questions that have been presented in other cases cited by the majority.

Until *Griffin* was decided (April 28, 1965), the controlling law in this case was a part of the Ohio Constitution and the question of substantive law presented by this case had been determined by the highest court in this state and supported by the United States Supreme Court. In *Griffin*, a new rule of substantive law was announced.

Therefore, the question before this court is not the same as that involved in *Edelman* upon which the majority relies. In that case, the constitutionality of a state statute was challenged on appeal in the United States Supreme Court for the first time. The constitutionality of that statute had not been raised in the state court and had not been determined previously by either the state court or the United States Supreme Court, and the United States Supreme Court properly held that it would not entertain jurisdiction of that question because the state's procedural requirement that the question be first raised in a lower state court was an adequate state ground for denying the appeal which the Supreme Court would recognize.

The question in this case is not the same as that before this court in *State* v. *Lynn*, paragraph six of the syllabus, upon which the majority relies. In that case, the defendant Conti testified, so that he did not claim and, therefore, was not denied the protection of the Fifth Amendment to the United States **Constitution**, as made applicable to the state by the Fourteenth Amendment, *Malloy* v. *Hogan, Sheriff*, 378 U. S. 1, and *Griffin, supra*. A codefendant in that trial, Illacqua, did not take the stand and did not testify, and the judge commented adversely upon his failure to testify. This court reversed the Illacqua conviction on authority of *Griffin, supra*. Conti raised in this court for the first time the question of whether the comment by the court upon the failure of the codefendant to testify was, as a matter of law, prejudicial error as to him. This question was not raised in the Court of Appeals, has not been determined by this court, or by the Supreme Court of the United States, and may very well not involve a federal constitutional question under *Griffin, supra*, but may represent only a question of whether this is prejudicial error under state law.

It is evident that the question in *Lynn, supra,* is a related question but is not the question presented in this case.

Likewise, the question which this court now has to determine is not the same question that was presented in *State* v. *Davis* (1964), 1 Ohio St. 2d 28. That case was tried several years after *Mapp* v. *Ohio* (1961), 367 U. S. 643, was decided, and in *Davis* the question was whether defense counsel, in objecting to the evidence on the ground that it should be excluded under the rule in *Mapp* at the trial instead of prior to the trial in accordance with the procedural law of Ohio, had waived a known federal constitutional right of the defendant.

In each of the different kinds of cases enumerated above, there is a legitimate interest and a sound public purpose to be served by a procedural rule which requires that the state courts (trial court, Court of Appeals and Supreme Court) be apprised of the question of law involved and accorded the opportunity to make a determination before that question can be properly presented to the Supreme Court of the United States. A majority of the Supreme Court of the United States, in such cases, has properly said that it will respect the procedural law of a state and accord that state the opportunity to determine the question of constitutionality in the first instance, and, where there is an adequate state procedural ground upon which the state court has refused to review the question, the Supreme Court of the United States will not assert jurisdiction.

In the case before this court, however, unlike any of those cases upon which the majority relies, the question of substantive law had already been determined by the United States Supreme Court and had not been changed in half a century before the trial. It would not have served a legitimate state interest or public purpose to have required defense counsel in the trial of this case, where that trial took place 5½ months before *Malloy, supra,* was decided, to have objected to the court's charge, which was in accord with the Ohio constitutional provision, Section 10, Article I, and which had been found by the United States Supreme Court not to deny any federal constitutional right of the defendant.

Until *Griffin* was decided, it would not have served any legitimate state interest or any sound public purpose to have required defense counsel to have raised a question about this

charge denying the defendant's federal constitutional rights under the Fifth and Fourteenth Amendments in the Court of Appeals, or in this court, for each of those courts would have been required to and would have followed the Ohio constitutional provision, Section 10, Article I. In fact, that point is not open to question because in *State* v. *Howell*, 4 Ohio St. 2d 11, this court held that there was no substantial constitutional question presented and disallowed the appeal. *Howell, supra,* was remanded to this court by the Supreme Court of the United States, and then reversed by this court in accordance with *Griffin, supra.* In *Howell, supra,* this court announced the proper rule of law and the rule which should be followed in this case.

This court also followed that rule in *State* v. *Browning* (1965), 38 Ohio Bar No. 45, 1256; *State* v. *Reed* (1965), 38 Ohio Bar No. 45, 1256; and *State* v. *Lynn* (1966), 5 Ohio St. 2d 106, paragraph two of the syllabus, with respect to defendant Illacqua.

It may well be, as Taft, C. J., argues, that after *Malloy, supra,* was announced, which occurred at the time this case was pending in the state Court of Appeals, an astute lawyer would have anticipated the decision in *Griffin,* but to have raised this question based upon such an anticipation would have been a vain and meaningless gesture because the state court was bound by the state Constitution until the Supreme Court of the United States declared that that state constitutional provision denied a federal constitutional right of the defendant. No legitimate state interest or public purpose would be served by requiring defendant to raise the question at that time in order to secure what the United States Supreme Court later determined was a federal constitutional right to which he was entitled.

In a case such as *Edelman* or *Lynn,* or the other cases cited by the majority, it is true that an orderly administration of justice and a proper regard for the support of the federal system make it appropriate for the Supreme Court of the United States to decline jurisdiction where the question of whether a federal constitutional right exists, and, if it does, whether it is impaired by a state constitutional or statutory provision or whether if it exists it has been waived by defendant, has not been determined by the Supreme Court of the United States and has

not been presented to the trial court or a lower state appellate court before it reached the Supreme Court of the United States.

This rule then serves a legitimate state interest and a sound public purpose.

In this case, however, the substantive law at all times, that is, before *Malloy* and *Griffin*, and after *Griffin*, had been determined by the United States Supreme Court. No factual determinations are involved, only the constitutional provision and the court's charge. No question of waiver is involved because the trial occurred 5½ months before *Malloy, supra*, was decided, and the case was already pending in the United States Supreme Court at the time *Griffin, supra*, was decided.

It is unmistakably clear that prior to *Griffin* an Ohio trial court could charge, in accordance with the provisions of the Ohio Constitution, Section 10, Article I, that this had been held not to be a denial of a federal constitutional right of a defendant; but, after *Griffin*, it is equally clear that if an Ohio trial court charges in accordance with the provisions of the Ohio Constitution, Section 10, Article I, the defendant in such a case is denied his federal constitutional right.

To state that an objection at the trial court or state appellate court level prior to *Griffin* would have permitted the lower court the opportunity to pass upon this question is, of course, not accurate and such objection would have served no purpose because such court would have been required to uphold the Ohio constitutional provisions as not in conflict with the United States Constitution on the basis of the then existing decisions of the United States Supreme Court.

For this court to insist upon such a rule, just for the sake of a rule, which would require such an objection to be made at a time when, until *Malloy, supra*, the United States Supreme Court had held that no federal constitutional right of the defendant was abridged by the charge, would, as the United States Supreme Court said in *Wright* v. *Georgia*, 373 U. S. 284, 291, decided May 20, 1963, " 'be to force resort to an arid ritual of meaningless form.' " See, also, *Staub* v. *City of Baxley*, 355 U. S. 313, 320; *Henry* v. *Mississippi*, 13 L. Ed. 2d 408.

Such a position can not be justified on the basis of serving a legitimate state interest or on the basis of establishing a

sound public policy when its only result is to deny to a defendant a federal constitutional right to which the United States Supreme Court has already determined that he is entitled as a matter of substantive law.

In *Henry* v. *Mississippi, supra,* Mr. Justice Brennan, writing for the majority of the court said, at page 412:

" * * * we have consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question. * * *

" * * *

"* * * These cases settle the proposition that a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the state's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture serves such a state interest. * * * "

The facts of this case bring it squarely within the *Griffin* rule.

Mr. Justice Stewart in *Tehan, supra,* said, at page 461:

"We have proceeded upon the premise that 'we are neither required to apply, nor prohibited from applying, a decision retrospectively.' *Linkletter* v. *Walker,* 381 U. S., at 629 * * *."

The United State Supreme Court decided in *Tehan, supra,* that *Griffin* should be applied to cases pending on direct appeal at the time of the announcement of that decision. This is controlling and I would, therefore, reverse the judgment of the Court of Appeals and remand the cause to the Common Pleas Court for a new trial.

HERBERT and BROWN, JJ., concur in the foregoing dissenting opinion.