George Leslie **SAMUELS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 24482.

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1968.

Rehearing Denied Oct. 2, 1968.

Gordon G. Hawn, Willis T. Taylor, San Antonio, Tex., by Ben F. Foster, for appellant; Foster, Lewis, Langley, Gardner & Hawn, San Antonio, Tex., of counsel.

Andrew L. Jefferson, Jr., Asst. U. S. Atty., Ernest Morgan, U. S. Atty., Western District of Texas, Ralph H. Harris, III, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES, GEWIN and THORN-BERRY, Circuit Judges.

GEWIN, Circuit Judge:

George Leslie Samuels (appellant) was indicted, tried and convicted of various violations of the Internal Revenue Code. The ten count indictment, returned on March 8, 1965, by a federal grand jury in the San Antonio division of the United States District Court for the Western District of Texas, specifi-

cally charged him under five counts with violations of 26 U.S.C. § 7201 for wilfully attempting to evade a large portion of income tax due by him and his wife, one count for each of the years 1958, 1959, 1960, 1961 and 1962. The other five counts of the indictment charged Samuels with violation of 26 U.S.C. § 7206(1) for wilfully subscribing a return containing a written declaration that it is made under the penalties of perjury, not believing the return to be true. A separate violation was charged for each of the five years 1958 through 1962 inclusive. Samuels entered a plea of not guilty and was tried before a jury. The trial lasted seven days. A verdict of guilty on all ten counts was returned and judgment of conviction was entered on December 20, 1966. Samuels received a sentence of eighteen months on each count, to run concurrently. A motion for a new trial was overruled and notice of appeal was timely filed on December 30, 1966. After a full and careful consideration of each of appellant's contentions, we affirm.

Appellant alleges that numerous errors were committed in the trial of the case which require us to reverse. Specifically, he contends that the prosecutor illegally commented on his failure to testify; the prosecutor's final argument was improper and prejudicial; the trial court erred in illegally limiting cross-examination, failing to properly charge on circumstantial evidence, admitting evidence, and overruling appellant's motion in arrest of judgment; and that a series of errors were committed in the course of the trial, the cumulative effect of which denied him a fair trial.

Although no attack is made upon the sufficiency of the evidence to support the judgment of conviction, it is nonetheless necessary briefly to set forth the facts giving rise to this prosecution and the government's contentions with respect to such facts, in order to place appellant's objections in their proper factual context. G. L. Samuels was the president of Samuels Glass Company, a corporation, throughout the period in question. The company offices were located in San Antonio, Texas, and its business consisted of selling glass and aluminum in the San Antonio area as well as selling scrap metal to various iron and metal dealers. Annual sales approached $2,000,000.00. While the evidence was contradictory on certain points, it was such that the jury could have found, as contended by the prosecution, that the violations primarily resulted from certain special purchasing arrangements made between appellant and two of the company's customers— Francis Kuemmel and Luther Warrick. When these two customers purchased items such as automobile windshields from the Samuels Glass Company, they dealt with G. L. Samuels personally, making their payments directly to him in cash. Such payments were not recorded in the books and records of the Samuels Glass Company and were not reported as income by either appellant or the corporation during the period 1958 through 1962. A similar pattern of operation was also shown involving lesser amounts in other transactions conducted by Samuels.

The most serious of appellant's contentions concerns the charge that the Assistant United States Attorney who conducted the prosecution for the government made a direct comment upon his failure to testify thereby violating his right to a fair and impartial trial. During the course of the trial Samuels did not take the stand to testify in his own behalf, but rather elected to exercise his rights under the Fifth Amendment to the United States Constitution and 18 U.S.C. § 3481. During the early portion of the closing argument of the prosecutor, the statement was made that "G. L. Samuels does not want to talk about the facts." At the conclusion of the argument, defendant's counsel called the attention of the trial court to the remark in his motion for a mistrial, which motion was denied. Again in his motion for a new trial, defendant's counsel raised the issue. The motion for new trial was overruled. Appellant contends

that both the plain meaning of the statement as well as the context in which it was made constituted a substantial and prejudicial violation of his right to a fair trial.

■ Under both the Fifth Amendment to the United States Constitution and 18 U.S.C. § 3481 it is clear that no comment is permissible on a defendant's failure to testify. Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed. 2d 84 (1961); Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893); DeLuna v. United States, 308 F.2d 140, 1 A.L.R.3d 969 (5 Cir. 1962). Such a comment is equally forbidden even though it is indirect. Benham v. United States, 215 F.2d 472 (5 Cir. 1954); DeMayo v. United States, 32 F. 2d 472 (8 Cir. 1929).

The government's threshold defense of the comment under attack here is that there was a failure by the defense to make a timely objection. In support of this argument the government relies heavily on the case of Fogarty v. United States, 263 F.2d 201 (5 Cir. 1959). That case also involved a contention that the attorney for the government had adverted to the defendant's failure to testify while making his closing argument to the jury. The court stated:

"* * * no objection was made to the argument when made. It is not sufficient to move for a mistrial after all the arguments are in. The purpose of requiring objection to be made while the argument is in process is to give counsel making the argument a chance to withdraw or explain it and the court a chance to exclude it from the jury's consideration. The Rules requiring prompt objection and the assignment of reasons therefor are rules of reason and their observance should not be lightly disregarded." (Citations omitted). 263 F.2d 201 at 204.

Another case which strongly supports the government's position is Langford v. United States, 178 F.2d 48 (9 Cir.1949). There the defendant was charged with a Mann Act violation, did not testify on his own behalf, and during the closing argument the attorney for the government stated: "Once again I want to direct your attention to the fact that the defendant was not on the stand. It seems to me that the least he could do would be to get on the stand and testify as to his occupation at this time or at the time when these acts were charged last spring." 178 F.2d at 53. No objection was made. The court stated that whether a defendant should be held to have waived the right to subsequently raise the objection (or whether such remark constituted "plain error") was dependent upon the "gravity of the error in the particular case—upon how flagrantly the rights of the accused have been disregarded." In the circumstances there present the court held that it would not treat the comment as plain error. In addition, the court added that had the trial court admonished the jury to disregard the remarks of counsel or given general instructions that no weight was to be given to defendant's refusal to testify, then any possible error would have been cured.

Despite the strenuous argument by appellant's counsel, we do not believe that the case of O'Connor v. State of Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed. 2d 189 (1966) forecloses all reliance on the many cases requiring prompt objection to comment on an accused's failure to testify. The O'Connor case involved a state prosecution for larceny. Subsequent to O'Connor's conviction, the Supreme Court decided Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) which applied the Fifth Amendment prohibition relative to comment on the accused's failure to testify to the states through the Fourteenth Amendment. The Supreme Court therefore remanded O'Connor's case to the Ohio Supreme Court in light of the Griffin decision, 382 U.S. 286, 86 S.Ct. 445, 15 L.Ed.2d 337. Upon remand, the Ohio Supreme Court again affirmed the conviction. Their sole ground was that O'Connor had failed to make a timely

objection to the illegal comment. 6 Ohio St.2d 169, 217 N.E.2d 685 (1966). O'Connor again appealed to the Supreme Court which held that failure to object in the circumstances there present was no bar to a consideration of the constitutional claim since petitioner had already exhausted his state remedies at the time of the *Griffin* decision and therefore could not be held to have anticipated the application of the Fifth Amendment to the states so as to be required to object. The Supreme Court carefully refrained from any all-inclusive language which would obviate the necessity to object in all cases. Rather the court said:

"We hold that *in these circumstances* the failure to object in the state courts cannot bar the petitioner from asserting this federal right. * * * Defendants can no more be charged with anticipating the Griffin decision than can the States * * * his failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court." (Emphasis supplied) 385 U.S. at 93, 87 S.Ct. at 254.

We construe the *O'Connor* decision not as foreclosing the issue of requiring a timely objection, but rather of reaffirming such a rule while carving out a specific exception to it. It is observed also that there was no question about the fact that the constitutional rule was violated by the prosecutor's remarks in *O'Connor*. The State did not even contest that fact.

In deciding whether or not an objection was made in a timely manner, we are loathe to require any strict and unalterable rule that one must always object to a comment upon the refusal of a defendant to testify at the precise moment such comment is made. However, in the circumstances of this case where no objection to the argument under consideration was made until after the argument was concluded, we decide that appellant's objection was not timely. Consequently, appellant can obtain relief only if the remark was so flagrant as to constitute plain error within the meaning of Rule 52(b), F.R.Cr.P.[1]

In determining whether the prosecutor's remark constitutes plain error, we must first consider whether the statement here in question was in fact a comment on the accused's failure to testify. In doing so we look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury. Davis v. United States, 357 F.2d 438 (5 Cir. 1966).

The theme of the prosecutor's argument was that while he had attempted to try the case solely on the facts, Mr. Foster, the defense counsel, had relied on "supposition, innuendo, and insinuation" and employed the usual defense stratagem of attempting to shift the focus of the jury's attention from the defendant, Samuels, to the prosecution's witness, Kuemmel. In effect, he was contrasting his tactics in conducting the case with those of defense counsel. It was within this framework that the comment was made that "G. L. Samuels does not want to talk about the facts."[2]

---

1. Rule 52(b) provides:
  "Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

2. The following are excerpts from the argument:
  "You know, when you try a case, it seems to me the best way to try it is not to be afraid of the facts no matter what they are or who says them. You sleep better, I think, when you try a case that way * * *
  Defending a lawsuit is a difficult task. I'm sure that's true. You do the best with what you have. If you don't have anything, ordinarily the best defense is a good offense. Expressed another way, let's try anybody except G. L. Samuels. Let's try anybody, except forget about the facts as they relate to G. L. Samuels. Let's try Francis Kuemmel. Let's try him in the hope that the jury will forget

This argument, viewed in its entirety, was not such that it can be said that the prosecutor's manifest intention was to comment upon the accused's failure to testify nor was it of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957 (2 Cir. 1965). The context in which it was made indicates that the remark was directed to the argument of counsel and not to defendant's failure to testify. It is very possible that such comment was merely inadvertent and the prosecutor's intention was to use defense counsel's name rather than "G. L. Samuels". At the very least it can be said that the contested statement, taken in context, represents a borderline case as to whether there was any comment on defendant's refusal to testify at all.[3]

In addition to the lack of any flagrant emphasis on the remarks of the prosecutor, the court gave several curative instructions to the jury on this issue.[4] It

---

about the facts as they relate to G. L. Samuels, and convict Francis Kuemmel of something even though he is not on trial. Let's confuse the issues. Let's hide the ball. Let's talk about supposition, innuendo, and insinuation. But the last thing you want to talk about in defending a case is the facts.

I am proud to talk about the facts * * * I want to speak on the issues raised by the defense in defending this case.

I want to talk about Francis Kuemmel. * * *

Mr. G. L. Samuels chose this man—this awful fellow, this awful fellow—simply because he was a good customer and could come up with the cash when G. L. Samuels wanted it. Mr. Francis Kuemmel was good enough to do business with, he was good enough to pay G. L. Samuels and the Samuels Glass Company about a hundred and ten thousand dollars over a five-year period, but he is such a bad guy now. * * * And he was good enough to lend money to at interest. But he is such a bad guy now.

I don't think you are going to like that. If he was good enough then, he is good enough now. Except, G. L. Samuels does not want to talk about the facts.

Mr. Foster says, 'Let me tell you what could have happened. Mr. Kuemmel could have put some of this money in his own pocket.'"

3. After the verdict had been returned the district judge did state to the attorneys that "it is evident to the Court that he [the Assistant United States Attorney, Mr. Jefferson] was referring to Mr. Foster, an inadvertent error, so that the Court didn't regard it as anything significant, because he immediately began to refer to Mr. Foster. * * *" As a witness to the argument and a participant in the proceedings we feel the district judge's comments are entitled to great weight on the issue of the manifest inten-

tion which prompted the comment and its natural and necessary impact on the jury.

4. The court, as a part of its charge to the jury instructed that:

"The law does not require a defendant in a criminal case to take the stand and testify. In the present case the defendant elected not to take the stand and testify. You are instructed that such fact is not to weigh against the defendant in the slightest degree and that no inference of any kind is to be drawn against him because of such fact. You are further instructed that you are not to discuss that matter during your deliberations."

In addition, before arguments the court instructed the jury as follows:

"You are informed that the statements made by counsel during the arguments are not evidence. It is their views of the evidence. It is not permissible and it is improper for counsel to give their own personal views as to the guilt or innocence of the defendant, because it might be assumed they had information not presented to you. So, when they make statements to you, you will regard it as though they had prefaced each statement with 'as shown by the evidence,' and that is all they are arguing is what is shown by the evidence, unless it should clearly appear that they are trying to state something of their own knowledge. So, counsel will notice, you won't have to keep saying 'assumed by the evidence' and not any of your personal beliefs."

After all argument was concluded the court further charged the jury that:

"Statements made by the attorneys in their opening statements or in their jury arguments are not evidence in the case and are not to be considered by you as such. Any such statements are the views of the attorneys as to what

is clear that in extreme cases it would be unrealistic to believe that instructions to the jury, however phrased, can remove the prejudicial effects of a constitutional error and courts have so stated. DeLuna v. United States, 308 F.2d 140 (5 Cir. 1962); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790 (concurring opinion of Justice Jackson at 453, 69 S.Ct. at 723). This principle is limited, however, to cases where the effect of the error is so great as to be impossible of erasure. Thus, in *DeLuna*, supra, the court vividly described the extreme circumstances as follows:

> "The court's instructions were intended, of course, to neutralize the effect of the comments. But considering the head-on collision between the two defendants, the repetition of the comments, and the extended colloquy over the comments between the trial judge and the lawyers, the imputation of guilt to DeLuna was magnified to such an extent that it seems unrealistic to think any instruction to the jury could undo the prejudicial effects of the reference to DeLuna's silence."

No such circumstances exist in the instant case. The comment here under attack was unexceptional and wholly lacking in aggravation and emphasis. The facts and circumstances of this case present a typical example of the kind of case where prompt objections and curative instructions have their highest and best use.[5]

Because of our view of all of the above circumstances attending the comments to which appellant objects, we are unable to discover any reasons which

dictate a ruling that such comments constituted plain error within the meaning of Rule 52(b), F.R.Cr.P. Even were we to conclude that a prompt objection had been made, our analysis of the applicable law would not differ. The same circumstances which lead us to the conclusion that there was no plain error would also dictate a ruling that the prosecutor's comment did not constitute an invasion of appellant's right against self-incrimination. We thus hold that the prosecutor's comments are not of such a nature as to constitute reversible error.

■ Appellant also lodges numerous objections to other allegedly improper and prejudicial comments made by the Assistant United States Attorney during the course of his closing argument to the jury. We have read the argument closely, but do not feel that it was improper or prejudicial. Meaux v. United States, 387 F.2d 370 (5 Cir. 1968), cert. den. 390 U.S. 1026, 88 S.Ct. 1415, 20 L.Ed.2d 284 (1968). No objection was interposed to many of the comments, nor were the comments of such kind and character as to constitute plain error. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). In addition most of these comments were well within the range of fair argument or constituted the prosecutor's fair response to matters provoked or invited by the argument of defense counsel. Del Cristo v. United States, 327 F.2d 208 (5 Cir. 1964); Isaacs v. United States, 301 F.2d 706, 738 (8 Cir. 1962); Taylor v. United States, 279 F.2d 10, 12 (5 Cir. 1960). We agree with the appellant that the argument of the prosecutor was extremely

will be or has been established by the evidence of the case. Other statements made by the attorneys during the course of the trial which are not in the nature of stipulations are not to be considered by you as evidence in the case. The evidence in the case consists of the testimony of the witnesses, exhibits admitted into evidence by the Court, and the stipulations of the attorneys."

5. It should be noted that the test for determining whether a comment on a de-

fendant's failure to testify can be treated as harmless error is closely related to the test for determining whether a timely objection was required or whether such comment can be cured by trial court instructions. Such determinations turn on whether the comment was extensive and stressed to the jury, and whether the evidence of guilt was great. Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L. Ed.2d 81 (1968).

effective, but we fail to find anything in it so improper or prejudicial as to require reversal.

■ Appellant further contends that the trial court committed error in limiting the cross-examination of one of the government's principal witnesses, Francis Kuemmel. There is no doubt that the testimony of Kuemmel was a vital factor in the government's case and that the defendant was entitled to a full and complete cross-examination of him in order to impeach his credibility or attack him in any other legitimate manner. Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953). In this case there was vigorous cross-examination of Kuemmel, and the objection of appellant is only that he was not allowed to cross-examine as to an allegedly false sworn inventory filed by Kuemmel in a prior state court divorce proceeding. However, the matter of certain alleged concealments of property by Kuemmel by using the names of other persons was allowed. As the Supreme Court stated in Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931): "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." Here, the district court permitted reasonable cross-examination on the question of concealment of assets by Kuemmel. In fact, the mention of the divorce in this context made it apparent that concealment took place in connection with such divorce. A full reading of the transcript of the cross-examination convinces us that the trial court did not abuse its discretion in relation to the scope of the inquiry. Harris v. United States, 371 F.2d 365 (9 Cir. 1967).

■ There remains one final contention of appellant that deserves some comment. He alleges that the trial judge failed to follow this circuit's test in cases where the evidence of guilt is solely circumstantial, and refused to apply such test in his charge to the jury. The test for which appellant contends is that the jury must be charged that a finding of guilt beyond a reasonable doubt in cases where only circumstantial evidence is introduced can only be returned if the jury might reasonably find that such evidence excluded every reasonable hypothesis except that of guilt. Riggs v. United States, 280 F.2d 949 (5 Cir. 1960); Panci v. United States, 256 F.2d 308 (5 Cir. 1958). In this case the conviction is supported both by direct and circumstantial evidence and in such cases it is not error to refuse to give a charge on circumstantial evidence. Barshop v. United States, 191 F.2d 286 (5 Cir. 1951), cert. den. 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688. The jury was correctly charged on reasonable doubt.[6] In the circumstances revealed by the record in this case the district court was not in error in refusing the requested charge. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955).

Appellant's other contentions that certain other comments of the prosecutor were improper, that the manner of presenting certain exhibits was argumentative and invaded the province of the jury, and that the cumulative effect of all the errors committed by the court below prevented him from receiving a fair trial, all are without merit. We

---

6. Instruction No. 4 given by the court reads:

"You have been instructed in other instructions that the Government must establish the guilt of the defendant beyond a reasonable doubt. A reasonable doubt of guilt means a doubt founded upon reason. It means a doubt which, without being sought after, fairly and naturally arises in your mind after a fair and candid consideration of all the evidence or lack of evidence. It does not mean a forced or strained or unnatural doubt. It is not a doubt based upon whim, or caprice, or sentimentality or sympathy. Proof of guilt to a mathematical certainty or beyond the possibility of a doubt is not required. Proof of guilt is sufficient if it establishes guilt to a moral certainty. Such proof is not sufficient if it does not so establish guilt."

have given full consideration to all of appellant's contentions, individually and collectively, and we find no error in the record. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593; Steele v. United States, 243 F.2d 712, 715 (5 Cir. 1957).

Judgment affirmed.