STATE OF IOWA, Appellee, v. WILLIAM WEBER, Appellant.

**INTOXICATING LIQUORS:** Bootlegging—Conflicting Evidence. Conflicting evidence reviewed, and held to sustain a conviction for bootlegging.

**WITNESSES:** Impeachment—Qualification of Witness. A witness who testifies that he knows the general moral character of a party may testify thereto, even though the witness does not reside in the locality in which the impeached party resides.

**WITNESSES:** Examination by Court. An impartial examination of a witness by the court is proper.

**TRIAL:** Instructions—Covering Requested Instruction. A requested instruction relative to the right of the jury to reject the testimony of a prosecuting witness who was actuated by a sinister motive, and as to the effect of contradictory statements, is properly covered

by the usual instructions relative to the interest of the witness and to the right of the jury to reject the testimony of a witness who has willfully testified falsely to a material fact.

INTOXICATING LIQUORS:     Unlawful Sale—Means and Motive in Effecting Sale.     It is proper to instruct that, if a sale of intoxicating liquors was in fact unlawful, then the means adopted by the buyer to effect the sale, and his motives, become quite immaterial.

INTOXICATING LIQUORS:     Bootlegging—Excessive Judgment.     Imprisonment for five months in the county jail and a fine of $600 for bootlegging will not be deemed excessive as to one who deliberately commits the offense, with full knowledge of the law.

Headnote 1:   33 C. J. p. 756.   Headnote 2:   40 Cyc. pp. 2198, 2199. Headnote 3:   40 Cyc. pp. 2439, 2440.   Headnote 4:   16 C. J. pp. 1013, 1063.   Headnote 5:   33 C. J. p. 790.   Headnote 6:   33 C. J. p. 797.

Headnote 3:   28 R. C. L. 587.

*Appeal from Jasper District Court.*—H. F. WAGNER, Judge.

JULY 1, 1927.

The defendant was convicted of bootlegging, and assessed a fine of $600, and given a term of five months in the county jail of Jasper County.   He appeals.—*Affirmed.*

*Korf & Korf* and *Thomas J. Bray*, for appellant.

*Ben J. Gibson*, Attorney-general, *Neill Garrett*, Assistant Attorney-general, and *George E. Campbell*, County Attorney, for appellee.

STEVENS, J.—I.   On the afternoon of March 26, 1926, E. L. Miller and Guy Bean, special investigators of the bureau of investigation, connected with the office of the attorney-general, purchased a quart of intoxicating liquor of one Henry Smoger, in the public highway not far from his residence, in Jasper County, and later, on the same day, obtained a gallon of liquor, containing, according to the testimony of the State, 50 per cent alcohol by volume and 42.5 per cent by weight, from the said Smoger, or from William Weber, the appellant.   They paid Smoger $3.00 for the quart purchased in the highway.   Miller and Bean tes-

1. INTOXICATING LIQUORS: bootlegging: conflicting evidence.

tified that they went in an automobile with Smoger to the farm home of appellant, and that Smoger told appellant that he wanted a gallon of oil; that the three men then went to Smoger's place, where they consumed a part of the quart of liquor; and that, within a few minutes thereafter, appellant drove up in a Haynes touring car, bringing with him a gallon jug of liquor, which he delivered to Miller, who paid him $3.00, $6.00 having previously been paid to Smoger.

Appellant, Smoger, and an employee of the latter's contradicted the testimony of the special agents as to the transaction and delivery of the liquor to them by appellant, Smoger claiming that he had the liquor stored in his granary, and that he sold and delivered it to Miller. Substantially in all other respects, the testimony of the witnesses agrees.

One of the propositions urged by appellant for reversal is that the evidence was insufficient to sustain the verdict. This contention is based largely upon the alleged good character of appellant and the alleged bad character and habits of the special agents. The witnesses agreed in their testimony that they all drank out of the bottle containing the quart of liquor purchased in the highway, but they disagree as to the quantity consumed by appellant and as to whether Miller was intoxicated or not. The witnesses for the defendant testified that he was. Miller received $15 for each prosecution for the violation of the prohibitory liquor laws in which he secured the evidence, and Bean was paid $5.00 per day for similar services.

Appellant resides upon, and operates, a farm of 200 acres, and six of his neighbors testified that he had a good reputation for moral character and law observance. Two witnesses, one 2. WITNESSES: the marshal of Laurel, a near-by town, and the impeachment: qualification other a deputy sheriff of Marshall County, tes- of witness. tified that his reputation for moral character was bad. These witnesses resided six or seven miles from the residence of appellant, and their competency as witnesses is challenged on the ground that they did not reside in the vicinity and could not be familiar with the general reputation of appellant. On this point, we need only say that they testified that they knew his general reputation in the community in which he resided, and had long been familiar therewith. It was not essential to their competency as witnesses that they re-

side in the immediate vicinity of the appellant. It was suffi-
cient if they were in a position to know, and knew, his general
reputation in the particulars mentioned. The weight of their
testimony was for the jury. The evidence is in such sharp con-
flict as to the part appellant took in the transaction that the
court could not hold that the verdict was either contrary to it
or not sustained thereby. Smoger is a confessed bootlegger,
and the explanation given by appellant of his part in the trans-
action, in view of the visit and the conversation about the oil
between him and Smoger before he went to the residence of the
latter, is not particularly persuasive or convincing. Whatever
may be thought of the character and business of the special
agents, Miller and Bean, the substantial disagreement between
their testimony and that of appellant's witnesses is in regard
to the transportation and sale of the jug of liquor; otherwise,
the disagreement is upon minor details. We are not inclined
to interfere with the verdict.

II. The presiding judge interrogated the witness Bean as
to the alleged transaction with appellant. The interrogatories
propounded by the court elicited nothing new, and were for the

3. WITNESSES:
examination
by court.

purpose, as stated at the time, in response to
the objections of counsel, of more clearly in-
forming the court as to the facts of the trans-
action. The examination was conducted with due propriety,
and we perceive no theory upon which there was error or mis-
conduct on the part of the court. None of the cases cited by
appellant sustain his contention to the contrary. They hold
merely that the trial court should not, as a rule, interfere with
the examination of witnesses when the examination is being
fairly conducted, and that questions should not be asked in a
manner or under circumstances to indicate to the jury that the
court is suspicious of the veracity of the witnesses, or so as to
indicate a leaning or bias in favor of one side or the other
State v. Spiers, 103 Iowa 711; State v. Allen, 100 Iowa 7;
Bierkamp v. Beuthien, 173 Iowa 436. The examination was
wholly proper, and could not have been more prejudicial to
appellant than the repetition of testimony already detailed
would ordinarily be.

III. Appellant requested the court to instruct the jury,
in substance, that a sinister motive for a criminal prosecution

may be shown by the defendant, and that, in considering the
case and determining the weight, if any, to be
given to the testimony of the witnesses Miller
and Bean, it would be proper for the jury to
consider any sinister motive which the evidence showed prompt-
ed these witnesses in bringing about the prosecution of appel-
lant, and that, if either of them had such a sinister motive, and
the prosecution was the result thereof, the jury would be war-
ranted in disregarding their testimony. The requested instruc-
tion was refused, and the following given by the court:

4. TRIAL: instruc-
tions: covering
requested in-
struction.

"You are instructed that the witnesses Miller and Bean
are detectives, and you may take into consideration said fact,
as well as the amount of their compensation, and upon what
their compensation depended, along with all other facts and
circumstances as disclosed on the trial, in determining their
credibility as witnesses."

The court further instructed the jury that, if they found
that any witness had willfully sworn falsely to any material
fact, they were at liberty to disregard the testimony of such
witness, except in so far as the same was corroborated by other
credible evidence in the case. Miller and Bean were not dis-
qualified to testify as witnesses in the case. The only effect of
their interest therein, if any, was to tend to discredit their tes-
timony. Under the instructions given, the jury was required
to give consideration thereto in determining the credibility and
weight of their testimony. The ultimate question to be de-
termined by the jury was the guilt or innocence of the accused.
The motive that inspires a criminal prosecution may, of course,
tend to discredit the testimony, if offered upon the trial, of the
person responsible for the prosecution, but it could have no
greater effect. Appellant was permitted to interrogate the wit-
nesses as to their interest in the prosecution and to go fully
into the nature and character of their business and employ-
ment. We find nothing in *State v. Shultz,* 177 Iowa 321, in
conflict with the course pursued by the trial court. The in-
structions given sufficiently covered the point raised by the re-
quested instruction.

IV.   The court refused to instruct the jury, as requested
by appellant, as to the effect of contradictory statements made
by a witness outside of the trial and in conflict with his testi-

mony, as detailed to the jury. The instructions to which we have already referred sufficiently met all the purposes of the one requested. The testimony to which the requested instruction was directed was that of the witnesses Miller and Bean. It was claimed by appellant, and testimony was offered tending to show, that some of the statements made in the preliminary hearing before the justice of the peace by these witnesses were contrary to those given upon the trial. The evidence related to a mere matter of detail, and we think the instructions touching the credibility of the witnesses were sufficient on this point.

Appellant's requested instruction No. 5, which was refused by the court, might, perhaps, properly have been given by the court; but its substance was stated in several paragraphs of the charge, and no prejudice is shown.

V.   The court in its instructions defined intoxicating liquor, and in part said:

"You are further instructed that any liquor which contains 50 per cent alcohol by volume and 42.5 per cent alcohol by weight, and which can be used as a beverage, is intoxicating liquor, within the meaning of the law."

The exception urged to this instruction is that it is not based upon any evidence in the case. A portion of the contents of the gallon jug was analyzed by a chemist, and found to contain alcohol, as stated in the instruction. The criticism is without merit.

VI.   The court further instructed the jury that it was immaterial what the means adopted by the buyer of intoxicating liquor are, or the purpose or motive which prompted the purchase, if the sale was unlawful. The court further instructed the jury in this connection that the material proposition to be determined was: Did the defendant, in this county and state, within the period of the statute of limitations, for himself or any other person, carry around upon his person or in any vehicle intoxicating liquor, with the intent to sell the same? The criticism of this instruction proceeds upon the theory that it, in effect, negatived the testimony with reference to the alleged sinister motive of Miller and Bean in the prosecution of appellant, and tended to withdraw the same from the considera-

5. INTOXICATING LIQUORS: unlawful sale: means and motive in effecting sale.

tion of the jury and to minimize the effect thereof. The instruction was clearly correct, was in no wise in conflict with any other paragraph of the court's charge, and did not refer to the credibility of the witnesses. The exception is without merit.

VII. The court gave the usual cautionary instruction as to the testimony of the defendant, who took the stand in his own behalf. We are urged to hold that this instruction is no longer a proper one, and that it should no longer be given in criminal cases. The instruction has stood the test of many decisions of this court, and we are not disposed to hold that it was error to give it.

Other questions substantially covered by what has already been said are argued by counsel. A strong plea is made for the appellant upon the basis of his alleged good character, as evidenced by the testimony of his neighbors, and that his conviction, substantially upon the testimony of Miller and Bean, should not be permitted to stand. It was the especial province of the jury to pass upon the fact issues of the case. With these the court has nothing to do. The defendant having been found guilty, the judgment can be reversed only upon error arising upon the trial.

The judgment of the court, which imposed a fine of $600 upon appellant and imprisonment for five months in the county jail, is urged as excessive, and we are asked to modify the 6. INTOXICATING same. The guilt of appellant having been LIQUORS: boot- found by the jury, we are not disposed to hold legging: exces- sive judgment. that the punishment is excessive. Offenses of the character here involved are deliberately committed, and with actual knowledge of the law.

We find no reversible error in the record, and the judgment is affirmed.—*Affirmed.*

EVANS, C. J., and FAVILLE, VERMILION, and KINDIG, JJ., concur.