STATE OF IOWA, appellee, v. JACK IRWIN LAMAR, appellant.

No. 52241.

(Reported in 151 N.W.2d 496)

JUNE 6, 1967.

Morris & Morris, of Des Moines, for appellant.

Richard C. Turner, Attorney General, Stephen C. Robinson, Assistant Attorney General, and Ray Fenton, of Des Moines, County Attorney, for appellee.

MASON, J.—The Polk County grand jury returned an indictment charging Jack Irwin LaMar with breaking and entering with intent to commit larceny contrary to section 708.8, Code, 1966. Following a plea of not guilty the matter proceeded to trial by jury which returned a verdict of guilty. Defendant was sentenced to imprisonment in the state penitentiary for a term not to exceed ten years.

From this final judgment defendant appeals.

His assignments of error may be summarized: (1) allowing a demonstration in the jury's presence of the manner in which certain tools in evidence might be used in opening a safe, (2) instructing on defense of alibi, (3) violating his constitutional right against self-incrimination and (4) misconduct of assistant county attorney in final argument.

I. During the early morning hours of September 5, 1965, Richard Kail, a Des Moines police officer, and James J. Riccio, then a civil defense auxiliary officer, were patrolling in the neighborhood of 5722 Hickman Road, Des Moines. About 3:30 a.m. they drove to the Chili King Restaurant No. 2 and proceeded to examine the doors and windows. In checking Kail looked through a small window in the north wall of the building and saw two men, one he claims to have recognized as Jack LaMar. After kicking in the front door, Kail apprehended one man but saw only the legs and feet of the other going through a ventilating hatch opening. A search of the scene was conducted by numerous Des Moines police officers.

George Karaidos, the restaurant owner, went to the restaurant in response to a police call, found the front door opened and the window pried open. He noticed there were tools on the floor and that the safe had been pulled away from the wall.

Defendant, arrested some days later, claimed he was several miles from the scene at his mother-in-law's home at the time the crime was alleged to have been committed. His alibi was corroborated by his mother-in-law who testified he had been at her home between 2 a.m. and 8 a.m. September 5.

At the trial Kail identified certain tools found at the scene including vise grips, punch, sledgehammer, pry bars and a pair

of cotton gloves which he described as safe burglar tools. Over defendant's objection he testified, "These are the exact tools you would need to get into a safe * * * the sawed-off sledgehammer to knock off the dial, * * * the vise grips that hold the punch to knock the tumblers out of the lock." When asked to physically demonstrate his testimony to the jury, Kail proceeded to show the manner in which the various tools could be used. He testified he later observed pry marks around an open window next to the door.

George Kachelhoffer, another police officer participating in the search, testified these pry marks on the window could have been made by one of the pry bars found at the scene. On his second trip to the restaurant he took the pry bar or crowbar and it matched the pry marks. He identified the tools found lying by the safe in the restaurant and over defendant's objection demonstrated the manner in which they could be used in peeling a safe and removing the dial and tumblers.

Jim Alexander, restaurant manager, testified he closed the restaurant about 2 a.m. September 5. There was a safe in the rear of the building containing approximately $1000 he placed there before leaving at 2:30, the doors and windows were locked and none of the various tools in evidence were in the restaurant at that time. He returned to the restaurant at noon and did not recall seeing the tools. Although the safe had been removed from its usual position, it had not been opened nor did it appear to have been otherwise tampered with. In identifying a photograph of the scene offered in evidence Alexander testified the safe appeared to have been moved away from the wall and was in that position when he observed it Sunday noon.

II. Defendant does not question the admissibility of the tools found at the scene nor Kachelhoffer's testimony that the window had been jimmied by a bar with a split bit similar to the pry bar admitted into evidence. However, he argues the court's failure to strike or stop Kail's demonstration was damaging to him in that it allowed the jury to speculate and guess with regard to matters which were not a part of the record; to allow the witness to engage in prejudicial and inflammatory specula-

tion was improper and deprived him of a fair trial. He bases this argument on the contention the witness had never used the tools in the manner described by him; the officer's knowledge was based on hearsay, according to what someone else had told him and the witness was not an expert to whom a hypothetical question could be addressed; that the safe had not been damaged, opened or tampered with and the tools had not actually been used in the manner described by the witness.

Defendant's position cannot be sustained. Although he had objected to the offer in evidence of the various tools found at the scene, as stated he does not question their admissibility on appeal. Properly identified articles found at the scene of the crime which tend to show its commission or the manner thereof, or explain some related matter in issue, are admissible in evidence for jury inspection. State v. Drosos, 253 Iowa 1152, 1159, 1160, 114 N.W.2d 526, 530, 531.

The determination of relevancy and explanatory value of demonstrative evidence is primarily within the discretion of the trial court. Kunzman v. Cherokee Silo Company, 253 Iowa 885, 892, 114 N.W.2d 534, 538, 95 A. L. R.2d 673, and citations; State v. Harless, 249 Iowa 530, 535, 86 N.W.2d 210, 213, and citations.

"The question of what constitutes 'burglar's tools' is and has been a question of some difficulty, but generally speaking it has always been held to refer to tools and implements which when assembled in combinations have such character as those commonly used to commit the crime of burglary. The fact that each tool or implement, or combinations of them, may be also used for an honest and legal purpose is held to be immaterial." Mahar v. Lainson, 247 Iowa 297, 299, 300, 72 N.W.2d 516, 518, and citations, including a quotation from 9 Am. Jur., Burglary, section 86, now 13 Am. Jur.2d, Burglary, section 74.

The tools found at the scene may properly be called burglar's tools. State v. Harless, supra, 249 Iowa, at 534, 86 N.W.2d, at 213. They were so described by Kail and Kachelhoffer.

It was a necessary part of the State's case to prove

beyond a reasonable doubt that defendant had broken into the restaurant with the intent to commit larceny. Intent to commit a public offense is vital under Code section 708.8. State v. Burns, 190 Iowa 6, 8, 179 N.W. 843, 844; 12 C. J. S., Burglary, section 2. The availability to the accused of tools or instruments of a type that could be used as a means of committing larceny or as showing preparation for the commission thereof, found at the scene, properly identified, was admissible as bearing on that intent. As tending to support this statement see State v. Harless, supra.

Although the tools were described as "the exact tools you would need to get into a safe", it must be admitted they could also be used for a lawful and honest purpose. It was material and proper for the court to permit the witnesses to illustrate the manner in which they might also be used to commit larceny. The fact defendant's activities were interrupted by the police before he had time to put the tools into actual use does not affect their relevancy on the issue of intent.

It is within the discretion of the trial judge to permit a witness to illustrate or explain his testimony by the use of maps, diagrams, pictures and physical objects. 98 C. J. S., Witnesses, section 327. In a footnote cited as supporting this statement appears the following statement from McKee v. Chase, 73 Idaho 491, 253 P.2d 787, 792, 793:

"Photographs, maps, and other drawings, are recognized as proper evidence to supplement the testimony of witnesses where the subject matter of the testimony is difficult to portray without such aids, or where the jury can be given a better understanding of the physical facts with which they are concerned. Their admission is proper to illustrate the testimony. They are also regarded as a proper means of expressing the witness' testimony. That is, a witness may be unable, by means of words or gestures alone, to convey to the jury an accurate understanding or picture of the relative position of the physical objects or their physical characteristics, without the assistance of photographs or drawings. So, he may make a drawing or a photograph, or identify and adopt such drawing or photograph, made by

another, as a means of portraying to the jury facts which are within his knowledge, and which he is not as well able to portray without such help (citing cases)."

"It is the rule that a trial court may, in its discretion, permit a witness to illustrate his testimony by the use of a physical object to the jury." Edwards v. State, 171 Tex. Cr. R. 70, 74, 344 S.W.2d 687, 690. Defendant's argument here was rejected in Berry v. Harmon, 329 S.W.2d 784, 793 (Mo.). In Kennedy v. Oleson, 251 Iowa 418, 425, 100 N.W.2d 894, 898, we held a scale drawing made by the witness from field notes of a deceased surveyor was admissible as illustrative of the testimony.

Defendant's objection that the witness never actually opened a safe by using similar tools in the manner demonstrated by him is without merit.

■ With a safe containing a large sum of money pulled from its normal position and a collection of tools that could be used to enter it in the manner described by the officers, there was evidence from which a jury could find defendant had the intent to commit larceny although he had not yet tampered with or damaged the safe.

III. Defendant complains of misconduct by the assistant county attorney in final argument which was reported. The assistant county attorney told the jury, "I think this case is so lopsided it is almost ridiculous to send you folks out for a decision. What happened in some other case has nothing to do in this case. But just to give you an example, it wasn't long ago that a case identical to this one, the jury returned a verdict of guilty in three minutes, and there wasn't as much evidence in that case as there is in this case. Now, Mr. Morris does a beautiful—." Defendant immediately took exceptions to the remark, moved that it be stricken and the jury be admonished. At that point the court ruled:

"The Court is going to sustain that objection. Actually, what happened in other cases, and the friendship of Mr. McKeon and Mr. Morris over the years, and Mr. Morris' activity as a County Attorney really have nothing to do with this case at all. I'm requesting that the jury disregard the remarks concerning

how long it took another jury to convict in a case where the evidence was not as great as this.

"Simply listen to this case, decide it on the basis of what you have heard here."

██ ██ "We have held repeatedly that misconduct of the prosecuting attorney in argument does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial (citing cases).

"We have also frequently pointed out that the trial court is in much better position than we are to judge whether claimed misconduct of counsel is so prejudicial as amounts to denial of a fair trial. Considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion (citing cases)." State v. Harless, supra, 249 Iowa, at 536, 86 N.W.2d, at 213, 214. See also State v. Barton, 258 Iowa 924, 931, 140 N.W.2d 886, 891, and citations.

Referring to what is said in State v. Harless, supra, page 535 of 249 Iowa, page 213 of 86 N.W.2d, to the effect "without expressing approval of the argument we are not persuaded it entitles defendant to a reversal", we condemn this type of argument by a prosecutor. However, we are not prepared to hold the trial court abused his discretion. This assignment cannot be sustained.

IV. In his motion for new trial and on appeal defendant has challenged certain conduct of the assistant county attorney on voir dire examination of prospective jurors as violating his constitutional rights against self-incrimination. The incident complained of occurred when the prosecutor was examining the seventeenth juror and asked the question, phrased to some extent, as follows: "Can you think of any reason why a person would not take the stand in their own defense, unless there was something to hide?" The question is asserted to have been propounded in the presence and hearing of all who were subsequently sworn and served as jurors. This examination was not reported and the incident became a part of the printed

record before us by reason of an affidavit of defendant's counsel filed with the motion for new trial.

Before considering this assignment further we give attention to the State's contention that the record is not sufficient to raise the question on appeal. Code sections 786.5 and 786.6, cited in support, provide:

"786.5 Bill by judge. Either party may take an exception to any decision or action of the court, in any stage of the proceedings, not required to be and not entered in the record book, and reduce the same to writing, and tender the same to the judge, who shall sign it if true, and if signed it shall be filed with the clerk and become a part of the record of the cause."

"786.6 Bill by bystanders. If the judge refuses to sign it, such refusal must be stated at the end thereof, and it may then be signed by two or more attorneys or officers of the court or disinterested bystanders, and sworn to by them, and filed with the clerk, and it shall thereupon become a part of the record of the cause."

Neither section was complied with. They have appeared in substantially their present form since the Revision of 1860, and provide a manner in which to make a part of the record for appeal incidents occurring in a criminal trial, such as those here.

We have repeatedly held alleged improper statements or prejudicial remarks of the prosecutor not preserved in the record cannot be reviewed. Rayburn v. Central Iowa Ry. Co., 74 Iowa 637, 641, 642, 35 N.W. 606, 608 (opinion on rehearing granted on other matters appears in 74 Iowa 637, 38 N.W. 520); State v. Bigelow, 101 Iowa 430, 434, 435, 70 N.W. 600, 601, and citations; State v. Burton, 103 Iowa 28, 30, 31, 72 N.W. 413, 414; State v. Berger, 90 N.W. 621, 622 (not reported in Iowa Reports).

The alleged objectionable remarks cannot be regarded as a part of the record when set out simply in an affidavit attached to a motion for new trial. The language alleged to be objectionable should be presented in a bill of exceptions. State v. Hall, 79 Iowa 674, 675, 44 N.W. 914; Ricker v. Davis, 160 Iowa 37, 47, 48, 139 N.W. 1110, 1116. Affidavits are insufficient

to make such objectionable matter available on appeal. State v. Helm, 97 Iowa 378, 387, 66 N.W. 751, 753, and citations; State v. Clemons, 78 Iowa 123, 125, 42 N.W. 562, 563; Knaebel v. Wilson, 92 Iowa 536, 540, 61 N.W. 178, 179; De Wulf v. Dix, 110 Iowa 553, 558, 81 N.W. 779, 781; State v. Keenan, 111 Iowa 286, 290, 291, 82 N.W. 792, 793; Hein v. Waterloo, C. F. & N. Ry. Co., 180 Iowa 1225, 1227, 1228, 162 N.W. 772, 774; State v. Walker, 200 Iowa 341, 343, 204 N.W. 215, 216.

 The bill cannot be signed and sworn to by an attorney for the defense after the judge's refusal to do so. State v. Kilduff, 160 Iowa 388, 393, 394, 141 N.W. 962, 963, 964, and citations. Filing of counter-affidavits is not a waiver of the right to object to the competency of the affidavits. State v. Burton, supra, 103 Iowa, at 31, 72 N.W., at 414.

 Defendant made no objections when the incident occurred. Objections to claimed improper conduct in argument must be made at the time. They are too late when raised for the first time in motion for new trial. State v. Smith, 248 Iowa 603, 610, 81 N.W.2d 657, 661, and citation. No motion for mistrial because of the alleged misconduct of the county attorney on voir dire examination was made. As bearing on this omission see State v. Hess, 256 Iowa 794, 797, 129 N.W.2d 81, 83.

The matter was not referred to in his motion for directed verdict and mistrial made at the close of the State's evidence nor in the motions renewed at the close of all evidence.

Although it might be argued the prosecutor in resistance to defendant's motion for new trial, in effect, admitted the incident, the procedure followed by defendant's counsel cannot be accepted as a substitute for the statutory requirement. 24A C. J. S., Criminal Law, section 1751(2).

Under the interpretation of what is necessary procedure under Code sections 786.5 and 786.6 as declared by the authorities cited, the State's position is well taken. Defendant's contention under this assignment presents nothing for review.

However, defendant claims under this assignment the conduct violated his privilege against self-incrimination. Thus the issue presented is the permissibility of invoking our procedural

rules to defeat defendant's constitutional claim. This involves the question whether we may properly refuse to consider a claim of error that was not raised as required by our procedure.

On April 28, 1965, the United States Supreme Court decided Griffin v. State of California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106. On January 19, 1966, the Court decided Tehan v. United States, 382 U. S. 406, 86 S. Ct. 459, 15 L. Ed.2d 453, determining that the law as declared in Griffin v. State of California, supra, was applicable to all cases that were still pending on direct review at the time Griffin was announced.

On June 15, 1964, Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed.2d 653, was announced, declaring that the protection of Amendment 5 to the United States Constitution was made applicable to the states by Amendment 14.

The present case commenced March 14, 1966, long after both Malloy and Griffin were decided. Defendant knew on March 14, 1966, that the protection of Amendment 5 as to self-incrimination was made applicable to proceedings in Iowa. He must have been familiar with the cases cited herein interpreting the two statutory provisions as to bills of exceptions and those relating to the method of objecting to alleged misconduct on voir dire; that in order to protect his claim of constitutional rights under the circumstances here he had to make his claim known in the manner and at the time required by our authorities.

Our attention has been directed to O'Connor v. Ohio, 382 U. S. 286, 86 S. Ct. 445, 15 L. Ed.2d 337. For a history of this case see State v. O'Connor, 6 Ohio St.2d 169, 217 N.E.2d 685. However, we believe the instant case differs from O'Connor where the Supreme Court reversed the Ohio court for holding defendant's failure to object to the proscribed comment at his trial as then required by the Ohio Constitution, precluded the Ohio appellate court from considering the claim that petitioner's federal constitutional rights had been infringed. O'Connor was tried in January 1964 with certiorari being granted December 13, 1965. Neither Malloy nor Griffin had been decided and the Supreme Court determined that he had not lost his right to

claim error because of failure to object in the state court trial as required by. Ohio procedure.

Prior to the decision in Griffin, under decisions of the United States Supreme Court, it was not a denial of a defendant's federal constitutional rights under Amendments 5 and 14 to the United States Constitution for the trial court, in its charge to the jury in a criminal case, to comment upon the failure of defendant to testify pursuant to section 10, Article I of the Ohio Constitution. This was true as to the prosecutor's right to comment under our practice as announced in State v. Ferguson, 226 Iowa 361, 363–373, 283 N.W. 917, 918–923.

Validity to such practice was established by Twining v. New Jersey, 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97, decided November 9, 1908, where the Supreme Court "* * * held, explicitly and unambiguously, 'that the exemption from compulsory self-incrimination in the courts of the states is not secured by any part of the Federal Constitution.' 211 U. S., at 114, 29 S. Ct., at 26 * * *." Tehan v. United States, supra, 382 U. S., at 410, 411, 86 S. Ct., at 462.

Under the Ohio practice until Griffin was decided no legitimate state interest or public purpose would be served by requiring defendant to raise the question at that time in order to secure what the United States Supreme Court later determined was a federal constitutional right to which he was entitled.

The present case also differs from the situation presented in People v. Griffin, 60 Cal.2d 182, 32 Cal. Rptr. 24, 383 P.2d 432, the decision from which certiorari was granted by the United States Supreme Court in Griffin v. State of California. In the state court defendant had failed to object to the proscribed comment as required by state procedure. The change brought about by Griffin gave defendant a federal constitutional right which had been held not to exist at the time of the trial in the state court.

Because of Twining v. New Jersey, supra, neither O'Connor nor Griffin could be said to have had a known constitutional right at the time of trial. But here at the time of the objectionable incident defendant had a known constitutional right given

by Griffin and Malloy and by not complying with our procedure must be held to have waived it. We have adequate procedure, if followed, to properly determine the constitutional question involved and there is a legitimate interest and a sound public purpose to be served by a procedural rule which requires that the trial court and this court be apprised of the question of law involved in the manner prescribed by the statute and our decisions. See Henry v. State of Mississippi, 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed.2d 408.

As supporting our position see footnote 9, Schmerber v. State of California, 384 U. S. 757, 766, 86 S. Ct. 1826, 1833, 16 L. Ed.2d 908, 917, where it is said:

"* * * Since trial here was conducted after our decision in Malloy v. Hogan, supra, making those principles applicable to the States, we think petitioner's contention is foreclosed by his failure to object on this ground to the prosecutor's question and statements."

See also footnote 9 of Mapp v. Ohio, 367 U. S. 643, 659, 81 S. Ct. 1684, 1693, 6 L. Ed.2d 1081, where it is said:

"As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected."

Therefore, defendant's claim of violation of his constitutional right against self-incrimination cannot be sustained.

V. Defendant's remaining assignment is directed to the court's instruction 10 defining alibi and failure to give defendant's requested instruction 2 which would have placed the burden on the State to establish beyond all reasonable doubt defendant was present at the time and place the crime is alleged to have been committed.

The instruction given by the court, although placing the burden on defendant to establish his claim of alibi, is not as detailed as the instruction held not to be reversible error in State v. Stump, 254 Iowa 1181, 119 N.W.2d 210, certiorari denied 375 U. S. 853, 84 S. Ct. 113, 11 L. Ed.2d 80. The holding in Stump on this proposition appears to express the view of the

majority of this court as now constituted. It has been said not to be an improper instruction as such. State v. Post, 255 Iowa 573, 585, 123 N.W.2d 11, 18. However, if this writer had been a member of the court at that time he would have joined the dissent in Stump.

Finding no error presented, the case is—Affirmed.

All JUSTICES concur except RAWLINGS, LARSON and BECKER, JJ., who dissent from Division V and the result.

RAWLINGS, J.—I respectfully dissent. By Division V the majority opinion adopts the theory expressed in State v. Stump, 254 Iowa 1181, 1195, 119 N.W.2d 210, to the effect, alibi is an affirmative defense and when asserted the burden of proof by a preponderance of the evidence rests upon the defendant.

To me this is not only an erroneous concept but is also prejudicial to the basic rights of an accused, inferentially depriving him of a fair trial.

In support of this position I first invoke a well prepared dissent by the late JUSTICE THORNTON in State v. Stump, supra, loc. cit., 254 Iowa 1203.

In addition Underhill's Criminal Evidence, Fifth Ed., section 441, makes the following pointed statement which is to me most persuasive:

"Some courts treat alibi, like insanity, as an affirmative defense and cast on the defendant the burden of establishing it, either by a fair preponderance of the evidence or to the reasonable satisfaction of the jury, although never beyond a reasonable doubt. It seems fallacious to call alibi an affirmative defense and place the burden of proving it on defendant. In most criminal cases the state must prove that accused was present at the scene of the crime, and the defendant may negate this in any way that he can, including the introduction of testimony that he was not present because he was elsewhere. Proof of alibi thus appears to negative an essential element of the crime rather than set up affirmative matter. Further, it is difficult to compare alibi with insanity. The reason that some jurisdictions place on defendant the burden of proving insanity is that insanity is a departure from the norm; people are presumed to be sane.

There is obviously no presumption that the defendant was present at the scene of the crime.

"Most courts hold that the burden of proving alibi does not rest on the accused. The burden of proof remains upon the prosecution and is not shifted to the accused when an alibi is offered as a so-called defense. If the alibi be regarded solely as a denial of a single necessary element in the charge, it seems as illogical to place the burden of proof on the accused as it would be to require him to prove the absence of a criminal intent. Time and place are essential elements of a crime, and the burden of proving them should be on the state.

"Although they may differ on the question of the burden of proving alibi, all jurisdictions agree that if the evidence of alibi, considered in connection with the other facts and circumstances of the case, raises a reasonable doubt of defendant's guilt, he is entitled to an acquittal. This creates an anomaly in those states which place the burden of proving alibi on the accused, for it is inconsistent to charge both that the defendant has the burden of proving alibi and that on all the evidence, including that relating to alibi the government must prove its case beyond a reasonable doubt."

In the same vein the court said in State v. Steele, 92 N. J. Super. 498, 507, 224 A.2d 132, 136: "Where the presence of defendant at the scene of the crime is essential to show its commission by him, the burden of proving that presence beyond a reasonable doubt is upon the State. Defendant has neither the burden nor the duty to show that he was elsewhere at the time and so could not have committed the offense. State v. Peetros, 45 N. J. 540, 551, 214 A.2d 2 (1965). Alibi is simply a part of defendant's general denial of guilt. Id., at p. 544, 214 A.2d 2."

In support of the foregoing see also 22A C. J. S., Criminal Law, section 574, page 320; 21 Am. Jur.2d, Criminal Law, sections 136, 137, pages 205–207; and 29 Am. Jur.2d, Evidence, sections 151, 157, pages 183, 188.

In my humble opinion the statutory notice of alibi, Code section 777.18, is merely a pretrial mechanical or procedural device, its purpose being to alert the State to the fact an accused

proposes to show he was elsewhere when an alleged crime was committed, thereby eliminating the surprise attendant upon any such unforewarned showing.

I respectfully submit alibi is nothing more than a part of defendant's general denial of guilt and upon that basis would reverse and remand for a new trial.

LARSON and BECKER, JJ., join in this dissent.