**STATE of Iowa, Appellee,**

v.

**William R. O'KELLY, Appellant.**

**No. 55895.**

Supreme Court of Iowa.

Oct. 17, 1973.

Rehearing Denied Dec. 13, 1973.

Paul E. Watts, Omaha, Neb., and Noran Davis, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., and Lyle A. Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND, and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves questions which arose in a prosecution for receiving stolen goods under § 712.1, Code 1973.

On the night of September 1, 1969, someone stole a large safe from the office of Delight Wholesale Company in Omaha, Nebraska. Money bags in the safe contained $2,614.83. Later that night an Omaha police officer spied a pickup truck hauling a safe. The occupants of the truck fled, but the officer seized the truck and safe and placed them in the Omaha police garage. Still later that night, someone stole the pickup and safe from the police garage.

That same night a farmer in Pottawattamie County, Iowa, was disturbed by a noise. The next morning, as he was mending fence, he observed vehicle tracks running down to the fence. He discovered a safe, covered with weeds, just over the fence in his field. He notified the Pottawattamie County sheriff's department, which called in the Omaha police. After ascertaining that the safe was from Delight Wholesale, Omaha police officers and a Pottawattamie County deputy sheriff set up surveillance at the site of the safe. They placed an electronic listening device near the safe and listened and watched throughout the day and evening of September 2.

About 10:30 p.m. on September 2 a car drove up and two individuals alighted. Shortly the officers heard mumbling of voices and beating on the safe. The mumbling stopped, and the two individuals carried objects to the road. The officers closed in. One of the two individuals—defendant William R. O'Kelly—tried to move back into the brush but halted when an officer fired a gun into the air. The objects which the two individuals had carried to the road were the safe door, the Delight Wholesale money bags containing the proper amount, sledge hammers, bars, and other devices for breaking open a safe.

The deputy sheriff took the two individuals into custody. Omaha authorities charged defendant in Nebraska with burglary of the Delight Wholesale establishment and sought extradition. Defendant waived extradition, because, he claims, a

judge of Council Bluffs Municipal Court and an assistant county attorney of Pottawattamie County promised no charges would be preferred against him in Iowa. Defendant was tried for burglary in Omaha, but the jury could not agree. The case was not retried for three terms, whereupon it was dismissed pursuant to Nebraska law.

The county attorney of Pottawattamie County then charged defendant with receiving stolen property and extradited him to Iowa. Trial began on that charge, but a mistrial was declared during the course of the proceedings. Defendant was then tried again—the present trial.

During the present trial a number of pictures were introduced into evidence. At one point the following events occurred regarding a picture which had been marked as an exhibit:

WITNESS CHRISTIAN [Delight Wholesale employee]: This is the morning that the Omaha police department brought the money back to us for recounting. We laid it on the floor, the picture, so he could get it. This is the same money we counted.

MR. WATTS [defense counsel]: Well, I will object then on foundation until I can question him as to the identity, how he ascertained identity.

THE COURT: You haven't asked him; he didn't say that photograph was a fair representation.

WITNESS: It is a fair representation of what was shown and delivered to me in the office of the Delight Wholesale Company on or about September 3, 1969.

Defendant filed an affidavit that this, as well as the trial court's facial expressions, rulings, and voice inflections during trial, prevented defendant from having a fair trial. The affidavit was not supported by affidavits of others.

Also during the trial, defense counsel brought out on cross-examination of the farmer that hunters and others came on the farm occasionally. The arguments to the jury were not reported, but during the prosecutor's closing argument the following was taken down:

MR. WATTS: Your Honor, at this time the defendant moves the court for a mistrial, for the reason that the prosecutor has just told the jury in the middle of his closing argument that if there were hunters, as I recall the testimony, why didn't the defendant produce them so the jury could hear that they were out there hunting, and I move for a mistrial on the ground that the defendant is not required to produce any evidence whatsoever to prove his innocence in the course of the trial.

THE COURT: Motion is overruled. I might suggest to counsel, you had better stay well within the rules or you are getting on dangerous ground.

Subsequently this also was taken down:

MR. WATTS: I make the same objection. Now he referred to why I did not subpoena on Mr. O'Kelly's behalf further evidence. He is pointing to pictures and gathering them in his hands, if I wanted more, and I again move for a mistrial that that is inferring to the jury that the defendant has to prove his innocence.

THE COURT: Motion is overruled.

In its instructions, the trial court told the jury, among other things, that defendant was presumed innocent and that the burden of proof rested on the State to prove defendant guilty by the evidence beyond a reasonable doubt. The trial judge also instructed that nothing he did or said during the trial constituted any intimation of what the verdict should be.

The jury found defendant guilty, and, after overruling defendant's motion for new trial, the trial court sentenced him. He appealed.

Defendant presses these contentions here: (1) the present prosecution is barred by double jeopardy, (2) the safe and other

articles were illegally seized and evidence of them is therefore inadmissible, (3) defendant was promised immunity in Iowa and therefore Iowa cannot prosecute him, (4) the State did not introduce substantial evidence in support of the information, and (5) the trial court and the prosecutor committed misconduct.

■ ·I. *Double Jeopardy.* Defendant's assertion of double jeopardy involves several assumptions which we accept arguendo only, such as that the doctrine applies between two states. The double jeopardy clauses are found in Article I, § 12, of the Iowa Constitution and in Amendment 5 to the United States Constitution. This part of Amendment 5 was held applicable to the states in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707.

Defendant makes three assertions regarding double jeopardy relying largely on federal decisions interpreting Amendment 5. He first asserts what amounts to episodic immunity; that is, a defendant once tried cannot be tried on another charge growing out of the same episode. He contends that this episode began with the Delight Wholesale burglary one night and ended with the removal of the contents of the safe in the farmer's field the next night. He says that having been tried on a charge of burglary, he cannot be tried on a charge of receiving stolen property in connection with that episode.

Assuming without deciding that the events on the nights of September 1 and 2 constituted one episode, the difficulty with defendant's contention is that the concept of episodic immunity has not been adopted. See e. g. State v. Garcia, 198 Iowa 744, 200 N.W. 201. While three members of the United States Supreme Court have espoused it, the other members of the Court have not accepted it. Compare opinions of Justices Stewart and Brennan in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. See also Annots., 25 L.Ed.2d 968, 51 A.L.R.3d 693; Comment, 58 Iowa

L.Rev. 1000. We therefore reject this contention by defendant.

■ Defendant next asserts double jeopardy in its classic form—that he was tried in Iowa for the "same offense" as in Nebraska. But the present facts do not at all fit under that form of double jeopardy. Under that form the rule is that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. See also State v. Cook, 261 Iowa 1341, 158 N.W.2d 26. The two charges involved here have entirely different elements. This court has expressly held that an accused is not placed in jeopardy when tried for receiving stolen property after having been acquitted of larceny of the property from a building in the nighttime. State v. Smith, 219 Iowa 168, 256 N.W. 651. See United States v. Jones, 418 F.2d 818, 827 n. 12 (8 Cir.) (acquittal of armed robbery of bank, subsequent charge of possession of stolen money—"The statute of limitations has not barred such prosecution [possession of stolen money], nor is such charge subject to the defense of double jeopardy."); Poffenbarger v. United States, 20 F.2d 42 (8 Cir.) (theft of mail bags, subsequent charge of abstracting their contents—not double jeopardy); 22 C.J.S. Criminal Law § 290 at 760. We reject this contention also which defendant makes.

■ Finally on double jeopardy, defendant asserts that the dismissal of the Nebraska burglary prosecution necessarily adjudicated in his favor an essential element of the charge of receiving stolen property in Iowa. This assertion involves double jeopardy in the form of res judicata, a form which the United States Supreme Court held applicable to the states in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25

L.Ed.2d 469, followed in Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549, Harris v. Washington, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212, and Turner v. Arkansas, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798.

Ashe involved a robbery of six poker players by masked gunmen. Ashe was tried for the robbery of one of the players and acquitted. The evidence to identify him as one of the gunmen was sketchy, and examination of the proceedings at the first trial showed that Ashe was acquitted because the State had not proved he was one of the robbers. The State then prosecuted Ashe for robbing another player in the same incident. This, the United States Supreme Court held, the State could not do. No question existed that a robbery occurred and that it occurred on only one occasion. The State, having had an opportunity to prove that Ashe was one of the robbers and having failed to do so, should not have a second opportunity although the second charge involved another player. The Court said that in a second proceeding a court is required to " 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' [Footnote omitted.] The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 180, 184]."

The Simpson case, supra, involved a robbery of a store manager and a customer by armed men. On Simpson's trial for robbery of the manager, a main question was identity, and Simpson was acquitted. The State then tried him for robbery of the customer on the same occasion. The United States Supreme Court reversed for a review and determination by the state court as to whether the acquittal could have been grounded upon an issue other than identification.

The Harris case involved an explosion of a bomb which someone sent through the mail. The explosion killed two persons and injured a third. Harris was tried for murdering one of the two persons and was acquitted on the ground the State did not prove he mailed the bomb. The United States Supreme Court held he could not be prosecuted for killing the other individual or for assaulting the injured person.

The Turner case involved a murder in the course of a robbery. Turner was acquitted of murder on the ground he was not at the scene. The Court held he could not be prosecuted for the robbery.

See also Percy v. South Dakota, 443 F. 2d 1232 (8 Cir.); 21 Am.Jur.2d Criminal Law § 217 at 258 ("before the doctrine of res judicata can be applicable in a criminal case, it must be shown that the issues in question were determined in a former prosecution"); Annots., 9 A.L.R.3d 203, 25 L. Ed.2d 968.

Ashe enjoins us to examine the prior proceedings in Omaha to ascertain if an essential issue in the second prosecution was adjudicated adversely to the State in the first proceeding. But the jury hung in the Omaha case and did not decide the facts. How then can we say what facts were adjudicated?

But we may assume for the purposes of this decision only that all issues were adjudicated in Omaha against the prosecution there. That does not aid defendant here, for we cannot hold an essential issue in the present prosecution was adjudicated in favor of defendant in Nebraska. We have two different times, places, and acts. Defendant may have been acquitted of the Nebraska robbery on any basis and still be guilty of receiving stolen property in Iowa. Suppose Nebraska failed to prove defendant's identity in the Delight Wholesale burglary. That does not mean defendant was not the one who received the stolen property in Iowa; indeed, defendant's participa-

tion in the Iowa incident is clear. The same is true of the other elements of burglary—breaking, entering, and doing so with intent to commit a crime. Nebraska may have failed to prove any or all of those elements in connection with the Delight Wholesale occurrence, but none of those issues is determinative of receiving stolen property in the farmer's field. We thus reject defendant's contention of res judicata as well.

We hold that the defense of double jeopardy is without merit.

■ II. *Illegal Seizure.* Defendant contends that the safe and contents were obtained by illegal search and seizure and were therefore inadmissible, citing Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081. Again we pass several questions without deciding them, such as whether defendant has shown he has standing to challenge seizure of the items. See Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208.

Defendant premises this contention on the ground that the seizure was accomplished in connection with, and is dependent on the legality of, the warrantless arrest of defendant. He asserts that the arrest was illegal. We may accept the premise, arguendo, but we cannot accept the assertion that the arrest was illegal.

The arrest was not made by the Nebraska officers only. They were called in by, and were working in conjunction with, the Pottawattamie County sheriff's department, and a deputy sheriff actually participated in the stakeout and arrest. A deputy sheriff has authority to call "any" person to help him make an arrest. Code 1973, § 337.1. He may arrest without warrant for a public offense committed in his presence, as this incident was. § 755.4(1). Had the deputy made the arrest alone it would have been legal, and we cannot hold it became illegal because he was assisted by others whom he had a right to call to his aid. Actually the arrest was by the posse, and it

was not illegal on that account. 6 C.J.S. Arrest § 16a at 616 ("A person called on to assist an officer in making an arrest may do whatever the officer himself might lawfully do, and he acts with all the authority of a formally deputized officer."). See also 5 Am.Jur.2d Arrest § 115 at 794.

■ Even if the Pottawattamie County sheriff and his deputy had not been involved, the arrest would have been valid. When the Omaha officers came to Iowa, they ceased to be officers but they did not cease to be persons. "An officer who seeks to make an arrest without warrant outside his territory must be treated as a private person. Of course, his action will be lawful if the circumstances are such as would authorize a private person to make the arrest." 5 Am.Jur.2d Arrest § 50 at 742. See also 6 C.J.S. Arrest § 12b(2) at 611. A private person may arrest for a public offense committed in his presence, as this offense was. Code 1973, § 755.-5(1).

We hold the arrest of defendant was not illegal. Hence defendant's argument, founded on illegality of arrest, falls.

■ III. *Promise of Immunity.* The trial court found on the evidence that defendant did not establish the Iowa officers promised him immunity from prosecution in this state. This alone disposes of defendant's contention of immunity, but we place our holding on another ground as well.

The alleged promise was by an assistant county attorney of Pottawattamie County and a judge of Council Bluffs Municipal Court. We do not have plea bargaining here—a promise by a prosecutor in exchange for a guilty plea to some charge. As to that, see Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; Annot., 43 A.L.R.3d 281. We do not have immunity from prosecution for giving self-incriminating evidence—usually regulated by statute, as it is in Iowa. Code 1973, § 515.136 (in certain insurance inves-

tigations), §§ 622.15, 622.16 (with specified crimes), § 741.4 (in prosecutions regarding tips and gratuities). We do not have a dismissal of a pending prosecution under a court's authority granted in § 795.5—which would not avail defendant anyway, as the section provides that the dismissal "is not a bar if the offense charged be a felony" as this offense is. We do not have a compromise of a misdemeanor under §§ 794.1 to 794.3. Nor do we have a grant of executive clemency under Article IV, § 16, of the Iowa Constitution or chapter 248 of the Code. We place all of those situations aside.

We have here an alleged promise by a judge and an assistant county attorney that Iowa would not prosecute if defendant would waive extradition to another state. We know of no statutory or common law authority in those officers to make such a promise, nor has defendant cited any. We believe that defendant remained amenable to criminal justice in Iowa. See 21 Am. Jur.2d Criminal Law §§ 146–153 at 215–222. See also State v. Houston, 206 N.W. 2d 687 (Iowa). Legislative policy expressed in our statutes fortifies this belief. Code 1973, § 794.4 (in chapter authorizing compromise of certain misdemeanors—"No public offense can be compromised, nor can any proceedings for the prosecution or punishment thereof, upon a compromise, be stayed, except as provided in this chapter") ; § 795.5 (in chapter authorizing court to dismiss prosecutions—"The court, upon its own motion or the application of the county attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner."). We hold that immunity, even if promised, was beyond the power of the officers to grant.

IV. *Sufficiency of Evidence.* The State had to prove (1) that the property in question was stolen and (2) was of a value exceeding $20; (3) and that de-

fendant bought, received, or aided in concealing the property (4) in Pottawattamie County, Iowa, (5) knowing it to be stolen. Code 1973, § 712.1; II Iowa Uniform Jury Instructions, No. 528.2 (1970). Defendant contends that substantial evidence was not introduced of the third and fifth propositions—receiving the property, knowing it to be stolen. The State proved, however, that defendant took physical possession of the property. In addition, that possession is unexplained. We have recently held that unexplained possession of recently stolen property permits the jury to infer the property was received with guilty knowledge. State v. Houston, 211 N.W.2d 598 (Iowa). The possession need not be for any particular period of time. State v. Krupin, 100 N.J.L. 7, 125 A. 97, aff'd 101 N.J.L. 228, 127 A. 270.

In this case the inference is strongly corroborated by circumstances. A car drove to the scene at night and two men got out. They went down to where the safe was concealed by weeds. They broke open the safe and carried the door and contents of the safe to the road. They had tools to break open a safe. The safe was not theirs but rather the property of Delight Wholesale. When the officers closed in, defendant started to leave but stopped when an officer fired a shot.

The evidence was abundant to establish receipt and knowledge.

V. *Prejudicial Misconduct.* Defendant contended in his motion for new trial and contends here that the trial judge, by words and acts, disparaged him. Trial courts should of course act impartially and avoid conduct from which the jury would infer bias against or favor for a party. Wilson v. Ceretti, 210 N.W.2d 643 (Iowa); State v. Kimball, 176 N.W.2d 864 (Iowa).

Here defendant stated his complaint by affidavit, but the trial court emphatically denied the truth of that document. Defendant did not obtain supporting affidavits by attorneys or bystanders

as § 786.6 of the Code authorizes for bills of exceptions. Consequently we do not have a record on which to pass upon defendant's complaint. State v. LaMar, 260 Iowa 957, 151 N.W.2d 496.

■■■■ Defendant also contends that the judge helped the prosecutor by telling him he had not proved that one of the exhibits, a picture, was a fair representation. The trial court apparently misunderstood the objection, as defense counsel did not object on that ground. We do not see, therefore, how defendant was harmed. Moreover, the trial court appears to have simply remarked while ruling on the admissibility of evidence and, in doing so, did not state any bias or favor for either party. Such remarks are not improper. "Remarks by a trial judge while ruling on objections as to admissibility of evidence are not held to be reversible error, provided they are not unfair and prejudicial to the accused." State v. McCarty, 179 N.W.2d 548, 553 (Iowa). See also State v. Fiedler, 260 Iowa 1198, 152 N.W.2d 236. In addition, the trial judge clearly instructed the jury that nothing he did should be considered any intimation of opinion upon the case.

We do not find prejudicial misconduct on the part of the trial court. State v. Weber, 204 Iowa 137, 214 N.W. 531; State v. Sawyer, 367 S.W.2d 585 (Mo.); State v. Harrison, 236 S.C. 246, 113 S.E.2d 783.

■■■ Defendant also contended in his motion for new trial that on two occasions the prosecutor made arguments to the jury which placed the burden of proof on defendant. The proceedings are not very clear; we question whether defendant made an adequate record. State v. Horsey, 180 N.W.2d 459 (Iowa); State v. Kendrick, 173 N.W.2d 560 (Iowa); State v.

LaMar, 260 Iowa 957, 151 N.W.2d 496. But passing that, the two arguments appear to be of the responsive kind which are frequently made in a hotly contested case—if there were hunters (a matter brought up by defendant on cross-examination) and if defendant desired additional pictures, why did not defendant subpoena them? The prosecutor did not argue that defendant had the burden of proof, and these statements in argument appear to fall within State v. Allison, 260 Iowa 176, 182, 147 N.W.2d 910, 913 ("Comment on failure of defendant to call witnesses available to him has been held fair argument"); State v. Katz, 241 Iowa 115, 40 N.W.2d 41; State v. Boyd, 199 Iowa 1206, 200 N.W. 205; State v. Peirce, 178 Iowa 417, 159 N.W. 1050. The trial court did not abuse its discretion. State v. Harless, 249 Iowa 530, 536, 86 N.W.2d 210, 213–214 ("the trial court is in much better position than we are to judge whether claimed misconduct of counsel is so prejudicial as amounts to denial of a fair trial. Considerable discretion is allowed the trial court in passing on such a matter"). The prosecutor did not, of course, comment on defendant's failure to testify.

In any event, we think defendant did not suffer prejudice; as the jury must certainly have understood from the instructions that defendant was presumed innocent and that the burden was on the State to prove him guilty by the evidence beyond a reasonable doubt. See State v. Hephner, 161 N.W.2d 714 (Iowa); State v. Mercer, 261 Iowa 371, 154 N.W.2d 140; State v. Ladehoff, 255 Iowa 659, 122 N.W.2d 829.

Upon the whole case, we hold that defendant had a fair trial and that the conviction should stand.

Affirmed.